# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

| | |
|---|---|
| ELAINE L. CHAO, Secretary of Labor, United States Department of Labor, ) ) ) | |
| Plaintiff, ) ) | No. 03 C 1792 |
| ) | Magistrate Judge Schenkier |
| v. ) ) | |
| CURRENT DEVELOPMENT CORPORATION, *et al.*, ) ) ) ) | |
| Defendants. ) | |

## MEMORANDUM OPINION AND ORDER

By an order dated December 20, 2005, this Court removed defendant George Klein as Trustee of the ERISA trust in question, placed a constructive trust on certain property located in Westmont, Illinois ("the Property"), and granted plaintiff's request to appoint an independent fiduciary to replace Mr. Klein (doc. # 28). By an order dated January 5, 2006, this Court appointed Consulting Fiduciaries, Inc. ("CFI") as independent fiduciary (doc. # 36). On September 29, 2006, pursuant to Court approval, the Property was sold to the Village of Westmont for $2,572,501.00. After deduction of certain closing costs, a balance of $2,370,880.71 remains.

CFI now seeks payment of $146,887.47 for certain fees and costs incurred in connection with the discharge of its responsibilities to date. In particular, CFI seeks approval for the following payments: (1) $11,528.50 in attorneys' fees incurred by Lyons & Caron ("L&C"), real estate counsel CFI retained to assist with the sale of the Property; (2) $76,500.00 in commissions to Hallmark & Johnson ("H&J"), the real estate broker CFI retained to assist with the sale of the Property; (3) $38,757.82 to CFI for its services to date; and (4) $20,058.15 for fees incurred by Crowe Chizek ("CC"), an accounting and financial consulting firm retained by CFI to assist it in determining the

proper distribution to the participants of the proceeds from the sale of the Property. Defendants raise various objections to these requests for payment, which we resolve below.

I.

CFI seeks $11,528.50 for attorneys' fees incurred by L&C. Defendants do not object to the lawyers' billing rates upon which the L&C fee request is based, but challenge the necessity and/or reasonableness of certain work done by L&C. We have reviewed each of the entries that defendants challenge. We agree that the following reductions should be made: .50 hours on February 13, 2006; 1.70 hours on June 9, 2006; .50 hours on June 30, 2006; .90 hours on July 19, 2006; .30 hours on August 4, 2006; 1.00 hours on August 8, 2006; .40 hours on August 28, 2006; and 1.20 hours on September 11, 2006. That results in a reduction of $1,705.00 for those entries billed at $310.00 per hour (all but the one on August 8, 2006), and another reduction of $250.00 for the entry billed at $250.00 per hour on August 8, 2006, for a total reduction of $1,955.00.

Defendants also argue that the hourly rate for the .20 hours of paralegal time billed should be $60.00 rather than $115.00 (which would reduce that charge from $23.00 to $12.00). We reject that challenge. Thus, we authorize payment to L&C in the reduced amount of $9,573.50.

II.

CFI seeks payment of a $76,500.00 commission to H&J for the sale of the Property. The requested commission CFI is based on 3% of $2,550,000.00 (which reflects the sales price of $2,572,501.00 less the value of the $22,501.00 real estate tax credit that CFI persuaded the Village to provide, which increased the final sales price from $2,550,000.00 to $2,572,510.00). Defendants argue that H&J should not receive a commission based on a percentage of the sales price paid by the

Village, because the Village was interested in buying the Property even before H&J came onto the scene.

Defendants are correct that the Village had expressed a prior interest in the Property; indeed, the Village had made firm offers to buy the Property. However, the Village's best prior offer was $2,307,000.00 – an offer that Mr. Klein had rejected, and thus was no longer on the table when H&J became involved in an attempt to locate a buyer. Moreover, the CFI has provided evidence (including an affidavit from the Village attorney) that persuades the Court that H&J's efforts in proposing a further appraisal of the Property, marketing it, and securing another bidder were instrumental in persuading the Village to increase its offer by nearly $243,000.00 (from $2,307,000.00 to $2,550,000.00). Accordingly, we overrule defendants' objection and authorize payment to L&C of $76,500.00.

## III.

CFI seeks payment of $38,757.82 based on 109.70 hours of work at $350.00 per hour ($38,395.00) and $362.82 in costs. Defendants do not challenge CFI's request for costs. Defendants do challenge the fee component of CFI's request on two grounds: (1) defendants say that CFI's rate of $350.00 per hour is too high, and should be reduced to $300.00 per hour; and (2) they say that the amount of time CFI billed is excessive.

As for the hourly rate, CFI has submitted evidence (doc. # 82) showing the extensive and impressive qualifications of the individuals (Messrs. Zilberstein and Heald) who have worked on this engagement. CFI's submission further establishes that the rate CFI seeks is well within the range that CFI typically charges and receives for its services. Accordingly, we find that the hourly rate CFI seeks is reasonable, and decline defendants' request to reduce the requested rate.

As for the time spent, we have reviewed defendants' challenges to particular entries. We agree that reductions should be made for the following entries: .75 hours on February 6, 2006; .75 hours on February 10, 2006; .50 hours on February 14, 2006; 1.00 hour on February 16, 2006; .50 hours on March 6, 2006; .25 hours on March 10, 2006; .75 hours on September 11, 2006; and .50 hours on September 12, 2006. That constitutes a reduction of five hours which, based on the claimed rate of $350.00 per hour, results in a reduction of $1,750.00. Defendants also request a further reduction of $2,900.00, which they claim reflects payment that CFI is seeking for an appraisal fee that already has separately been paid. However, we do not find that this amount is included either in CFI's fee request or its expense request, and thus decline to make that additional reduction.

Accordingly, we authorize payment to CFI of $37,007.82.

## IV.

CFI seeks payment to CC of $20,058.15. Defendants raise four objections to the requested payment to CC.

*First*, defendants say that CC's work is unrelated to the mission of CFI, which was simply to sell the Property and distribute the proceeds. The Court disagrees. In order to calculate how the proceeds from the sale should be distributed, we agree that CFI may investigate whether other funds have been improperly withdrawn from the ERISA trust, and thus whether the distribution of the sale proceeds should be adjusted to correct for any earlier improper withdrawals.

*Second*, defendants challenge the $390.00 hourly rate charged by Mr. Reynolds, claiming it should be no more than $300.00. CFI has submitted evidence (doc. # 82) of Hugh Reynolds's qualifications, which are impressive. CFI's evidence establishes that Mr. Reynolds was paid at an

hourly rate of $317.00 for work he performed for the Department of Labor during the summer of 2004. We believe that Mr. Reynolds's claimed hourly rate here is too high in comparison to the rate Mr. Reynolds charged two years ago. We will approve compensation to CC for Mr. Reynolds's time at the rate of $350.00 per hour, which represents about a 10 percent increase over the hourly rate Mr. Reynolds charged in his Department of Labor engagement in 2004.

*Third*, defendants challenge the amount of time spent by CC to date. We have reviewed the challenged entries and agree that the following reductions should be made: .50 hours on March 15, 2006; .50 hours on March 31, 2006; 2.75 hours on May 15, 2006; 3.75 hours on May 16, 2006; .50 hours on May 17, 2006; .75 hours on July 14, 2006; .50 hours on August 1, 2006; .25 hours on August 22, 2006; 1.75 hours on September 6, 2006; .75 hours on September 7, 2006; 1.25 hours on September 12, 2006; .25 on September 14, 2006; 4.00 hours on September 11, 2006; 1.75 hours on September 12, 2006; and 2.00 hours on September 12, 2006. At the varying rates at which these hours were billed, that results in a reduction of $3,895.00. In addition, the fees must be further adjusted to account for our reduction of Mr. Reynolds's hourly rate to $350.00. That adjustment results in a further reduction of $1,207.86 (after already excluding 2.25 hours of Mr. Reynolds's time entirely, as indicated above). This results in a total reduction of $5,102.86, which would result in a payment to CC of $14,955.29.

*Fourth*, defendants say it is premature to approve any payment to CC, since we do not yet know whether its work will result in an increased distribution to the participants. However, the Court does not expect CC to act as a volunteer in performing its work, or that CC would receive no payment until its work is complete. We should not lose sight of the fact that the reason CFI (and thus CC) is involved at all is because Mr. Klein's breach of fiduciary duty required that he be

discharged as trustee. Thus, the reasonable costs incurred by CFI in selling the Property, and in making sure that the participants who were shortchanged by Mr. Klein before are not shortchanged again in the future distribution that will be made, are costs that Mr. Klein has brought on himself by his own actions; they are self-inflicted wounds.

Accordingly, the Court authorizes payment to CC of $14,955.29.

## CONCLUSION

For the foregoing reasons, the Court authorizes CFI to make payments totaling $138,036.61, as follows: (1) $9,573.50 to L&C, (2) $76,500.00 to H&J, (3) $37,007.82 to CFI, and (4) $14,955.29 to CC.

**ENTER:**

_____
**SIDNEY I. SCHENKIER**
**United States Magistrate Judge**

**DATE: November 22, 2006**