# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

ELAINE L. CHAO, Secretary of Labor, )
United States Department of Labor, )
)
                  Plaintiff, ) No. 03 C 1792
) Magistrate Judge Schenkier
    v. )
)
CURRENT DEVELOPMENT CORPORATION, )
*et al.*, )
)
                  Defendants. )

## MEMORANDUM OPINION AND ORDER

By an Order dated December 20, 2005, this Court removed defendant George Klein as Trustee of the ERISA trust in question, placed a constructive trust on certain property located in Westmont, Illinois ("the Property"), and granted plaintiff's request to appoint an independent fiduciary to replace Mr. Klein (doc. # 28). The Court appointed Consulting Fiduciaries, Inc. ("CFI") as independent fiduciary (doc. # 36). The Court took that action because it concluded that Mr. Klein breached his fiduciary duty to trust participants by, among other things, distributing proceeds of the trust upon its dissolution based on a $1.7 million valuation of the Property, without telling participants that he had an offer to sell the property for $2,307,000.00. On September 29, 2006, the Court approved the sale of the Property by CFI to the Village of Westmont for $2,572,501.00.

Those proceeds have not yet been distributed to the participants in the trust (who include Mr. Klein and his wife), but remain in trust pending determination by the Court as to: (1) the percentage shares in the trust upon which distribution to the participants should be based, (2) what additional monies, if any, should be restored by Mr. Klein to the trust on the ground that they were

improperly withdrawn from the trust, and (3) what costs incurred by CFI and others assisting it in the performance of its work as an independent fiduciary should be borne by Mr. Klein or, instead, should be shared by all the participants.

By an order dated November 22, 2006 (doc. # 85), the Court authorized CFI to make interim payments totaling $138,036.61 as follows: (1) $9,573.50 to Lyons & Caron ("L&C"), real estate counsel CFI retained to assist with the sale of the Property; (2) $76,500.00 to Hallmark & Johnson ("H&J"), the real estate broker CFI retained to assist with the sale of the Property; (3) $14,955.29 to Crowe Chizek ("CC"), an accounting and financial consulting firm retained by CFI to assist it in determining the proper distribution to the participants of the proceeds from the sale of the Property and what amounts, if any, should be restored to the trust by Mr. Klein; and (4) $37,007.82 to CFI for performance of its work as the independent fiduciary. Now pending before the Court is a request by CFI for authority to make additional interim payments for services performed from roughly late September 2006 through May 2007 (doc. # 103). CFI seeks approval for the following payments: (1) an additional payment of $2,420.89 in attorneys' fees to L&C; (2) an additional payment of $11,996.04 to CC; (3) an additional payment of $16,304.11 to CFI; and (4) a payment of $42,662.48 to Pedersen & Houpt, P.C. ("Pedersen"), a law firm that the Court authorized CFI to retain. In addition, CFI's motion provides an estimate of additional expenses that will be incurred, which CFI projects as ranging from $28,000 to $42,000. Defendants raise various objections to these requests for payment. Our rulings on the requests and the objections are set forth below.

# I.

Before addressing the specific requests by CFI and objections by defendants, we address the threshold question of the standard by which we judge the requests for compensation.

Our order which appointed CFI to act as the independent fiduciary provides that "[o]ther than transactional fees that would have been incurred by the Plans even if the Defendant Klein had not been removed as Trustee, all of Consulting Fiduciaries, Inc.'s fees and expenses shall be paid by Defendant Klein. Prior to obtaining payment for services and expenses authorized pursuant to this consent judgment, Consulting Fiduciaries, Inc. shall present to the Court, for its approval, an itemized fee application, including hourly rates of pay, and dates and hours of work, accompanied by a description of work performed, as well as an itemized statement of expenses." Of course, the reason for requiring CFI to provide this information as a condition to receiving payment is to enable the Court to assess whether the work for which payment is sought was necessary, and whether the amount of payment sought is reasonable. Indeed, CFI acknowledges that the services and expenses for which payment is sought must be necessary and reasonable (CFI Reply Mem. at 3).

In arguing that the fees and expenses sought are not reasonable, defendants direct the Court to case law applying the fee-shifting provisions for prevailing parties under 42 U.S.C. § 1988 (civil rights proceedings), 29 U.S.C. § 216(b) (Fair Labor Standards Act), 42 U.S.C. § 1973(1)(a) (Voting Rights Act), as well as to 28 U.S.C. § 1927, which imposes fee shifting as a sanction for "multipl[ying] the proceedings in any case unreasonably and vexatiously." CFI protests that those provisions, and the case law decided under them, are not applicable here because CFI is acting as a fiduciary upon whom a "heavy duty of responsibility" has been imposed (CFI Reply Mem. at 2). We agree that CFI's responsibility is a serious one. However, we believe that CFI would

3

acknowledge that the serious nature of its responsibility does not equate to a blank check to spend any and all sums in the discharge of that responsibility. Reasonableness and necessity remain relevant touchstones. Thus, the case law concerning fee shifting under various statutory schemes, while not binding here, does provide the Court with useful guidance in assessing the questions of necessity and reasonableness.

That said, we recognize that in discharging its fiduciary responsibilities, CFI properly may wish to exercise special care to conduct a thorough factual and legal investigation, so as to best insure that the participants receive distribution of all funds to which they are entitled – both from the proceeds of the sale of the Property and from recovery of amounts that Mr. Klein may have improperly withdrawn from the trust. We take that into consideration in deciding whether certain actions taken by CFI (and those retained to work with it on this project) have been necessary, and whether the expense incurred in pursuing those matters has been reasonable.

In their objections, defendants also criticize the practice used in some time records of "block billing" – that is, recording in one time entry a number of different tasks without allocating the specific amount of time spent on each of the different tasks. We reject defendants' general objection to block billing. The Seventh Circuit has made clear that "[a]lthough 'block billing' does not provide the best possible description of attorneys' fees, it is not a prohibited practice." *Farfaras v. Citizens Bank and Trust of Chicago*, 433 F.3d 558, 569 (7th Cir. 2006). So long as the billing statement reasonably sets forth the dates of work, description of work, total hours expended, and total cost for task, the use of block billing does not preclude an award of fees.

With that backdrop, we now address each of the requests for compensation.

**A.**

In our November 22, 2006 order, we authorized CFI to pay L&C $11.528.50 in attorneys' fees and costs. In its current motion, CFI seeks authorization to pay L&C an additional $2,420.89 in attorneys' fees and costs that were not included in the earlier award. Defendants object to a number of the L&C time entries, but we agree with only one of the objections. The L&C billing statement shows two entries by the same person on November 27, 2006 for .6 hours of work devoted to "calls with Client, title company regarding post closing distribution of proceeds." It appears to the Court that this reflects an inadvertent double billing for the same time, and so we reduce the L&C request by .6 hours. At the applicable billing rate of $310.00, this reflects a reduction of $186.00. Accordingly, we authorize payment to L&C in the reduced amount of $2,234.89.

**B.**

In the November 22, 2006 order, the Court authorized CFI to pay CC $14,955.29. In its current motion, CFI asks for authorization to pay CC an additional $11,996.04 for work not covered by the earlier order. Defendants object to this request, and say that CC should only receive an additional $5,628.36.

We have reviewed defendants challenges to CC's entries. We agree that the following reductions should be made:

- The 12/04/06 entry of 2 hours for copying legal invoices and putting a file back together is excessive, and should be reduced to .5 hours, which, at the billing rate of $120.00 per hour, results in a reduction of $180.00.

- The entries on 03/08/07 through 03/19/07 by Mr. Reynolds for preparing a letter to the CFI recorded 8 hours of time. We agree that this is excessive for preparing and revising a letter and should be

reduced to 4 hours. At the applicable billing rate of $350.00 an hour, this 4 hour reduction results in a reduction $1,400.00.

- The entries between 04/19/07 and 05/09/07 by Mr. Reynolds for revising and updating the letter to CFI cover 5.25 hours of time. This is excessive for revising a letter that was already written. We reduce that amount to 2.75 hours. At the applicable billing rate of $350.00, this 2.5 hour reduction results in a reduction of $875.00.

- The entries by E. Schultz on 12/06/06 and 12/07/06 record 2.75 hours for searches in client files for documents. This is excessive, and we reduce the time to 1 hour. At the applicable billing rate of $110.00 an hour, this 1.75 hour reduction results in a reduction of $192.50.

- We decline to award an overnight delivery expense on 05/17/07 of $20.18, because that same expense appears twice. We also decline to award an expense on 03/25/07 for $28.18 for a car rental.

We reject defendants' other challenges to CC's billing statement. The reductions that we have set forth above total $2,695.86. Thus, subtracting that from the amount CFI seeks to pay CC ($11,996.04) results in an amount of $9,300.18, which is the amount that we authorize CFI to pay CC.

## C.

In the November 22, 2006 order, we authorized payment to CFI of $37,007.82. In the current motion, CFI seeks an additional award of $16,205.00 in fees (based on 46.30 hours of work), and $99.11 in costs. Defendants do not challenge the request for costs, but argue that the fees are excessive and should be reduced to $7,017.50, based on 20.05 hours of work.

We have reviewed defendants' challenges, and find that the following ones have merit:

- On both 11/22/06 and 01/16/07, CFI billed 3.25 hours for attending court. Neither of the court dates involved lengthy proceedings. And, while we acknowledge that it is fair for CFI to include travel time, we nonetheless consider 3.25 hours for each court date to be excessive. We reduce that amount for these excessive appearances to 5.00. That

1.50 hour reduction, based on the applicable $350.00 per hour rate, results in a reduction of $525.00.

- We reduce the entry for a telephone conference on 11/27/06 from 1.75 hours to .25 hours to coincide with what other parties to the same phone call billed. At the applicable rate of $350.00 per hour, .50 hour reduction results in a reduction of $175.00.

- The 11/29/06 entry records .50 hours for issuing checks and calling the bank. We reduce the time for these ministerial tasks to .25 hours. At the applicable rate of $350.00 per hour, this .25 hour reduction results in a reduction of $87.50.

- The 01/11/07 entry records .75 hours for "review." We decline to award this time, as the entry does not provide any further information about what was reviewed. At the applicable rate of $350.00 per hour rate, this reduction decreases the amount that will be awarded by $262.50.

- We reduce the amount sought for an entry on 01/16/07 for "review prior purchase price" from 1.7 to .25 hours, as there is no explanation about why there was a need – after the sale of the Property – to spend nearly two hours reviewing prior purchase price. At the applicable rate of $350.00 per hour rate, this reduction of 1.45 hours results in a reduction in the amount that will be awarded by $507.50.

- We eliminate entry on 01/31/07 for 8.7 hours to 0 hours, as CFI acknowledges that this "appears to have been mistakenly billed twice" (CFI Reply Mem. at 5). At the applicable rate of $350.00 per hour rate, this reduction diminishes the amount that CRI will be awarded by $3,045.00.

We have considered, but reject, defendants' other challenges to CFI's request for compensation. The reductions we have described above total 13.15 hours, resulting in a reduction in fees of $4,602.50. Thus, we award CFI $11,602.50 in fees ($16,205.00 - $4,602.50) and $99.11 in costs for a total award of $11,701.61.

**D.**

Finally, we turn to the request by CFI to pay Pedersen $45,662.48 in attorneys' fees and costs. Defendants raise a number of objections both to the time for which compensation is sought, and to the rates at which Pedersen seeks compensation. Defendants say that if the Court finds block billing to be impermissible, then the total amount that should be awarded to Pedersen should $5,205.16. Alternatively, defendants argue that if the Court finds block billing acceptable, Pedersen's compensation still should be reduced, but to $18,365.16.

As we have indicated above, we do not find that block billing is unacceptable. Nor do we find, in the instances challenged by defendants on the ground of block billing, that the records are so lacking as to deprive Pedersen of compensation. Defendants' other objections fall into six general categories, which we address below.

*First*, defendants criticize various time entries where Pedersen describes work as "follow up" on various matters (*e.g.*, "follow up re motion to clarify," "follow up re tax and labor issues," "follow up re participant complaint"). Defendants argue that a follow up, by its nature, would always be brief, not taking more than 10 minutes (Defs.' Mem. at 7-8). We disagree. We do not think defendants would make that argument if, instead of describing the work as "follow up," Pedersen indicated that it was "conducting further research," or "giving further consideration to" various issues. The fact that Pedersen used the word "follow-up" as a shorthand is, like block billing, perhaps not the best way to describe time that is being reviewed by the Court for reasonableness, but it is by no means unacceptable. We therefore reject defendants challenge to the non-block billed entries that use the phrase "follow up," which encompassed 11.5 hours of time. Pedersen is entitled to compensation for that time.

8

*Second*, defendants challenge Pedersen's billing of 5.25 hours for preparing two affidavits that were submitted in support of the earlier fee requests by CFI and CC. Five hours of that time was spent by lead counsel from Pedersen; the other .25 hour by a paralegal. CFI offers no specific response to this objection. We have reviewed the affidavits, and they are both brief (Mr. Silverstein's is three pages long, and Mr. Reynolds is two pages long). Each of them sets forth background information about the individuals, various professional engagements they had, and their billing rates. We expect that this type of information would be readily available to those individuals, and that five hours spent by lead counsel, Mr. Holtzman, in drafting these affidavits is too much time. We reduce the time for drafting these affidavits by Pedersen's counsel to 2.00 hours; we will award the additional .25 hours of paralegal time.

*Third*, defendants challenge 53.75 hours scheduled by Pedersen for researching and drafting a memorandum filed with the Court concerning the tax affect of a partial distribution. Defendants criticize the total amount of time spent, and the fact that 80 percent of it was performed by partners with high billing rates instead of younger, less expensive, attorneys or paralegals. CFI does not specifically respond to this objection. The research and memorandum at issue were requested by the Court in order to provide guidance on the tax treatment and impact upon the trust (and the participants) from any order requiring Mr. Klein to restore to the trust any improperly withdrawn funds, and distributing the remainder of proceeds held in trust (both those restorative payments and the proceeds from the sale of the Property) to participants. The research on this issue proved complicated because the issue had not been specifically addressed either in the tax code or by any court. Thus, Pedersen located an examined revenue rulings and private letter rulings for guidance, and also communicated orally and writing with the IRS for guidance.

The question of the appropriate tax treatment to be given to restorative payments in distributions is obviously of great importance here, and we find that the time spent on that task as well as the decision to have more experienced attorneys do the work was reasonable in the circumstances. We also note that the memorandum in question addressed not only the tax issue, but other issues of relevance in the matter (specifically, CFI's recommendation as to the amount of funds that defendant should be ordered to repay to the Plan; the distribution process; and ultimate conclusion of the role of the independent fiduciary). The only area in which we find a basis to reduce the hours is with respect to the work of Mr. Altman with respect to time he devoted to drafting and reviewing the memorandum on May 25, May 29 and May 30, 2007. On the time records, it appears that Mr. Holtzman also was performing those tasks during the same time period. We do not see a reason for the two most senior Pedersen attorneys involved in the case to both be engaged in that drafting task. Thus, for the 6.25 hours billed by Mr. Altman on those dates, we reduce that by 5.25 hours, to 1.00 hour.

*Fourth*, defendants criticize two entries of conferences by Mr. Holtzman on January 31 and April 12, 2007. Mr. Holtzman billed 3.00 hours on January 31 for a conference call with Mr. Silverstein (CFI) and Mr. Reynolds (CC), when Mr. Silverstein and Mr. Reynolds only charged .75 and 1.25 hours respectively for the same call. On April 21, Mr. Holtzman billed 1.5 hours for a conference with Mr. Reynolds and Mr. Silverstein, when Mr. Silverstein only charged .7 hours for the same conference, and Mr. Reynolds did not record that call at all. CFI does not respond to this specific criticism. We do find the criticism valid, and thus reduce the time for which Pedersen will be compensated for those entries by 2.00 hours.

*Fifth*, plaintiffs object to the request for payment of $3,643.84 in costs for Lexis/Nexis computer research. CFI has not responded to this criticism. We agree with defendants that before deciding whether this cost is compensable, we need further information concerning the nature of the research performed, how much computer time this reflects, and whether Pedersen normally charges its clients separately for computer time (or instead considers it an overhead cost that is reflected in the hourly fee schedule). Thus, we decline to award the requested amounts for Lexis/Nexis research at this time. However, we do so at this time without prejudice. When CFI makes its final request for payment to Pedersen, it is free to seek compensation for this amount and to supply the requisite detail to enable us to assess that request.

*Sixth*, defendants challenge the hourly rates charged by the Pedersen attorneys in question: $395.00 an hour for Mr. Holtzman ($385.00 before January 1, 2007), $375.00 an hour for Mr. Altman ($365.00 before January 1), $315.00 an hour for Mr. Solomon ($305.00 before January 1), $250.00 an hour for Mr. Bernstein, and $180.00 an hour for Ms. Farrington, a paralegal ($170.00 before January 1). Defendants argue that the rates charged by Messrs. Holtzman, Altman and Soloman should be compensated at $300.00 per hour; Mr. Bernstein's time as an associate should be compensated at $200.00; and the paralegal time should be compensated at $100.00.

At the threshold, we will not approve rates that are in excess of the rates that applied at the time that Pedersen took this engagement in October 2006. Thus, we consider only the reasonableness of the rates applicable in October 2006.

CFI has not responded to defendants' specific criticisms of the rates charged by Pedersen. In the motion, however, CFI included information concerning Mr. Holtzman's and Mr. Altman's background from the Pedersen website. That information provides ample basis to conclude that

11

hourly rates of $385.00 an hour and $365.00, respectively, are reasonable – subject to Pedersen verifying that those are the rates that Mr. Holtzman and Mr. Altman typically charge other clients of the firm, and that clients typically pay those rates.

CFI did not provide any similar information concerning the backgrounds of the other attorneys or for the paralegal who billed time on the case. We have reviewed the Pedersen website, and find that based on the information there provided concerning Mr. Solomon, a $305.00 per hour rate for him would be reasonable – again, subject to the same verification that this is the rate he typically charges Pedersen's clients, and that Pedersen's clients typically pay that rate for his work. The associate who devoted time to the case, Mr. Bernstein, is not on the website and apparently is no longer at the firm. Nor do we know what rate Mr. Bernstein charged in October 2006. Thus, we have no basis to assess the reasonableness of the rate sought for Mr. Bernstein. The same is true for Ms. Farrington. We will give Pedersen an opportunity to provide information showing that the experience and background of those individuals is sufficient to command the requested rates, as well as the information that those are the rates that Pedersen normally charges clients for their services and that this is the rate clients typically pay for those services.[1]

To summarize, then, we will reduce the compensation sought by Pedersen to eliminate 5 hours by Mr. Holtzman and 5.25 hours for Mr. Altman. Before awarding any amounts to Pedersen, however, we will require that Pedersen provide further information supporting the reasonableness of the rates being sought.

---

[1] We do so despite the fact CFI (and Pedersen) should have known we would require that information. In considering CFI's earlier request for authorization to make payments, we required that CFI provide this kind of information to support the hourly rates sought by CFI and CC (doc. # 74).

12

## CONCLUSION

For the foregoing reasons, the Court grants in part CFI's petition for payment of fees and costs as follows: (1) $2,234.89 to L&C; (2) $9,300.18 to CC; and (3) $11,701.61 to CFI. By September 7, 2007, CFI shall supply the information set forth above concerning the billing rates sought for the Pedersen attorneys and paralegal. Upon reviewing that information, the Court will determine the appropriate billing rate for those individuals, and, based on that billing rate and the hours that the Court has found compensable on the analysis set forth above, will authorize interim payment to Pedersen.[2]

ENTER:

SIDNEY I. SCHENKIER
United States Magistrate Judge

**Dated: August 27, 2007**

---

[2] CFI's motion set forth a list of expected further expenses. This projection was provided in response to a request by the Court for information on that subject. We therefore do not believe that CFI sought, or that we are in a position at this time to give, approval to an estimate of future expenses.

13