

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

ELAINE L. CHAO, Secretary of Labor, )
United States Department of Labor, )
                                        )
                 Plaintiff,       )    No. 03 C 1792
                                        )    Magistrate Judge Schenkier
    v.                                    )
                                        )
CURRENT DEVELOPMENT CORPORATION, )
et al.,                                   )
                                        )
                 Defendants.    )

## MEMORANDUM OPINION AND ORDER

By an order dated December 20, 2005, this Court removed defendant George Klein as Trustee of the ERISA trust in question, placed a constructive trust on property located in Westmont, Illinois ("the Property"), and granted plaintiff's request to appoint an independent fiduciary to replace Mr. Klein (doc. # 28). The Court appointed Consulting Fiduciaries, Inc. ("CFI") as independent fiduciary. The Court took that action because it concluded that Mr. Klein breached his fiduciary duty to trust participants by, among other things, distributing proceeds of the trust upon its dissolution based on a $1.7 million valuation of the Property without telling participants that he had an offer to sell the Property for $2,307,000.00.

On September 29, 2006, the Court approved the sale of the Property by CFI to the Village of Westmont for $2,572,501.00. Those proceeds have not yet been distributed to the participants in the trust (who include Mr. Klein and his wife), but remain in trust pending determination by the Court as to: (1) the percentage shares in the trust upon which distribution to the participants should be based, (2) what additional monies, if any, should be restored by Current Development Corporation

("CDC") and to the trust on the ground that they were improperly withdrawn from the trust, and (3) what costs incurred by CFI and others assisting it in the performance of its work as an independent fiduciary should be borne by CDC or, instead, should be shared by all the participants.[1]

In its November 22, 2006 Memorandum Opinion and Order, the Court made clear that CFI was authorized to "investigate whether other funds have been improperly withdrawn from the ERISA trust, and thus whether the distribution of the sale proceeds [of the Property] should be adjusted to correct for any earlier improper withdrawals" (doc. #86: Mem. Op. and Order at 4). CFI has performed that investigation, and has filed with Court a report and recommendations (doc. # 100) addressing the following subjects: (1) the amount of money that CFI recommends should be restored to the trust because the withdrawals by CDC were improper; (2) the tax consequences, if any, of restoring previously withdrawn monies to the trust, and then distributing those monies (along with the proceeds from the sale of the Property) to participants; and (3) the process to be used to determine the amount of distribution to be made to each participant, and the advisability of making interim distributions before the final distribution is made.

The parties all have had an opportunity to address the recommendations of CFI (*see* Secretary's Amended Response (doc. # 118); Defendants' Objection (doc. # 120)). We set forth below our rulings on what additional monies should be restored to the trust, and we further address other recommendations set forth in CFI's report.

---

[1] By orders dated November 22, 2006, August 27, 2007, and September 12, 2007, the Court has authorized CFI to make interim payments totaling $196,450.68 as follows: (1) $76,500.00 to Hallmark & Johnson ("H&J"), the real estate broker CFI retained to assist with the sale of the property; (2) $11,808.39 to Lyons & Caron, the real estate counsel CFI retained to assist with the sale of the Property; (3) $24,255.47 to Crowe Chizek ("CC"), an accounting and financial consulting firm retained by CFI to assist, among other things, in determining what amounts, if any, should be restored to the trust by Mr. Klein; (4) $48,709.43 to CFI; and (5) $35,177.39 to Pedersen & Haupt, P.C., a law firm retained to represent CFI in its role as independent fiduciary.

2

## I.

CFI recommends that the Court order CDC to restore $169,061.29 to the trust. The restorative payments that CFI recommends fall into four categories: (a) $43,776.00 in legal fees paid out of trust funds; (b) $61,620.00 in non-legal expenses paid out of trust funds; (c) a payment of $46,777.00 made from the trust to reimburse CDC for alleged "mistaken in fact contributions" it erroneously made; and (d) $16,888.29 in legal and appraisal fees that CDC paid out of proceeds obtained by a loan taken on the Property.[2] We address each of those recommendations in turn.[3]

### A.

CFI recommends that $43,776.00 withdrawn from the trust to pay legal expenses (out of $138,000.00 in documented payment of legal expenses out of the funds) should be restored because they were incurred by Mr. Klein and CDC in responding to Department of Labor and Internal Revenue Service audits. Defendants do not contest that $18,500.00 of those monies withdrawn for legal expenses should be restored, but they claim that two categories of fees, totaling $25,276.00, were properly charged to the trust and should not be restored: $16,738.50 in fees paid to Gayle Meadors, and $8,537.50 paid to Timothy Mlsna (Defs.' Opp. at 2-4). Thus, by their silence, defendants concede that the remaining $18,500.00 ($43,776.00 - $25,276.00) should be restored to

---

[2]CFI tabulates the sum of these numbers as $168,701.43. We find the sum of these four numbers to be $196,061.29, and so that is the figure we use.

[3]As a threshold matter defendants argue that we should disregard each of these recommendations because CFI's memorandum fails to cite any authority to support them. Defendants are correct that neither CFI nor the CC report that CFI incorporates into its submission (*see* CFI Report, Ex. B) cites specific statutory authority or any case law. That said, the CC report sets forth in detail the factual basis for seeking to recover the funds in issue, and has provided (albeit without citation) the legal analysis for doing so. Moreover, the submissions by defendants and the Secretary have identified relevant case law and statutory provision. Accordingly, because the issues are sufficiently developed for the Court to fairly address them, we reject defendants' waiver argument.

3

the trust. In addition, we agree with CFI that the fees paid to Mr. Mlsna and Ms. Meadors also should be restored to the trust.

The invoices at issue regarding Mr. Mlsna cover the period August 1999 through November 1999. In opposition to CFI's recommendation, defendants have submitted a declaration from Mr. Mlsna (Defs.' Opp., Ex. A).[4] Mr. Mlsna's declaration states that he served as a trustee from about June 1999 through June 2000 (*Id.*, at ¶ 1). Mr. Mlsna further stated that the invoices for his services from August through November 1999 reflected bills for his services as trustee, and not for legal services in connection with Department of Labor and Internal Revenue Service audits (*Id.*, at ¶ 3).

We are skeptical about Mr. Mlsna's assertion. While Mr. Mlsna's declaration says that the invoices to the plans and his work was "related to services I rendered as Trustee *and not for legal services*" (Defs.' Opp., Ex. A, ¶ 3) (emphasis added), the daily time entries and descriptions of services for the period August through November 1999 that Mr. Mlsna sent to Mr. Klein stated that his time entries reflected hours of "*legal services*" (CFI's Report, Ex. B., doc. # 100-3 at 14-15) (emphasis added). We cannot reconcile those two inconsistent assertions. We credit the characterization of Mr. Mlsna's services set forth in the contemporaneous bills over those contained in a declaration prepared nearly eight years after the fact. Without more, this would lead us to reject defendants' objection to CFI's recommendation concerning the payments to Mr. Mlsna.

---

[4] CFI asks that we strike this declaration on the ground that defendants have failed to cooperate in providing CFI and CC with requested information (CFI's Reply at 3-4). CFI offers no evidence that defendants were asked, but failed, to provide information concerning Mr. Mlsna's role as Trustee. We deny CFI's motion to strike that declaration (as well as the declaration of Kenneth Arneson, which was also submitted with defendants' opposition to CFI's report and recommendations).

4

But, we need not rest our decision on this basis alone. As the Secretary points out, Mr. Mlsna signed the checks to his law firm for the services he rendered between August and November 1999. Payments by Mr. Mlsna (even as trustee) to his own law firm for his services would appear to run afoul of violate Section 406(b)(1) of ERISA, which bars a fiduciary from "deal[ing] with the assets of the plan in his own interest and for his own account." 29 U.S.C. § 1106(b)(1). In opposing restoration of the funds paid to Mr. Mlsna, defendants rely on Section 408(c)(2) of ERISA, which states in relevant part that Section 406 does not prohibit a fiduciary from "receiving any reasonable compensation for services rendered, . . ., in the performances of his duties with the plan." 29 U.S.C. § 1108(c)(2). We find this argument unpersuasive for two reasons.

*First*, there is case law holding that Section 408(c)(2) "will not provide a safe harbor to a plan fiduciary . . . who has allegedly violated Section 406(b)(1)." *LaScala v. Scrufari*, 96 F.Supp. 2d 233, 238 (W.D. N.Y. 2000) (citations omitted). *Second*, even if Section 408(c)(2) could provide a safe harbor, it would do so only upon a showing by defendants that the compensation paid was "reasonable." Here, defendants have failed to offer evidence to establish the reasonableness of the compensation paid. Mr. Mlsna's declaration attaches information concerning his background and experience showing that his hourly rate of $175.00 is eminently reasonable for work *as an attorney*. Defendants' papers fail to show, however, that this hourly rate reflects reasonable compensation for Mr. Mlsna's work *as a trustee*. We have been given no evidence about what amounts – if any – other trustees were paid for their services. We do not even know what (if anything) Mr. Mlsna was paid for his services during the period that he was a trustee from June through July 1999 and

5

December 1999 through June 2000. Thus, for these reasons, we find that defendants have failed to establish that the payments to Mr. Mlsna at issue were proper under Section 408(c)(2).[5]

With respect to Ms. Meadors, defendants argue that the payment for her services are appropriate under Section 408(b)(2), which permits a fiduciary to "contract[ ] or make[ ] reasonable arrangements with a party in interest for office space, or legal, accounting or other services necessary for the establishment or operation of the plan, if no more than reasonable compensation is paid therefore." 29 U.S.C. § 1108(b)(2). Once again, it was defendants' burden to show that the payments paid to Ms. Meadors for her services reflect "no more than reasonable compensation." Defendants offer no declaration from Ms. Meadors to show that either the services she performed, or the compensation she received for them, was reasonable. We, therefore, reject defendants' argument as to Ms. Meadors.

Accordingly, we accept and adopt CFI's recommendation that CDC restore $43,776.00 in legal expenses be restored to the trust.

**B.**

CFI recommends that the Court order defendants to restore $61,260.00 to the trusts, which CFI says reflect improper payments made (1) to certain employees of CDC (Messrs. Arneson and Null), and (2) to reimburse CDC for office supplies, telephone service and copiers allegedly used for trust purposes. CFI argues that many of these payments (at least $44,731.00) were improper because they were untimely. CFI further argues that all of the payments were improper because they

---

[5] The Secretary also argues that this transaction violated Section 406(b)(2), which prohibits a fiduciary from acting "in any transaction involving the plan on behalf of a party (represent a party) whose interests are adverse to the interest of the plan or the interest of its participants or beneficiaries." 29 U.S.C. § 1106(b)(2) (Secretary's Am. Resp. at 6-7). In light of our ruling, we need not address that argument.

6

reflected costs that CDC would have incurred for supplies, utilities, and employee expenses even had the employees not been performing work for the trusts.

Defendants do not respond to the timeliness argument. Instead, defendants argue that payment for these services was authorized by Section 408(b)(2). We disagree that Section 408(b)(2) applies. Defendants have offered no evidence of a contract or other reasonable arrangement with Mr. Arneson for providing services. Indeed, Mr. Arneson's declaration indicates that during the time in question, he was a regular employee of CDC (Defs.' Opp., Ex. B, ¶ 2). Mr. Arneson's declaration further establishes that he generally spent no more than 10 to 25 percent of his time in a given year working on matters for the plans. We do not think that exemption in Section 408(b)(2) was intended to allow a fiduciary to have the plans defray his cost of employing people whom he would employee anyway, merely because a relatively small portion of their responsibilities involve doing work for the trusts. Accordingly, we adopt CFI's recommendation to restore the $61,260.00 in non-legal expenses.

C.

CFI asks that we order defendants to restore $46,777.14 in payments that CDC took from the plans on the ground that they reflected contributions for employees who did not work the required 1,000 hours in a given year. CFI argues that these payments do not qualify as payments made based on a "mistake in fact" that CDC was entitled to recoup from the plans, and that even if they were, CDC waited too long to recover the money from the plans. In their opposition, defendants made no response to this recommendation by CFI, and thus have tacitly agreed to it. In any event, we are persuaded by CFI's argument, and we order the $46,777.14 to be restored.

**D.**

Prior to this Court's December 20, 2005 order removing Mr. Klein as Trustee, Mr. Klein obtained a loan in the amount of $196,366.83 from Community Bank of Elmhurst using the Property as collateral. From the loan proceeds, Mr. Klein made distributions to the participants, paid interest and taxes, and paid various other expenses. In its report, CFI recommends that $16,888.29 be restored to the trust. This amount consists of $1,600 in appraisal fees and $15,288.29 in legal fees (CFI's Report, Ex. B, at 5).

Defendants object to this request, stating (without a supporting declaration from Mr. Klein or other evidentiary material) that many of the fees "relate to zoning and condemnation issues with . . . Property (Defs.' Opp., at 6). For her part, the Secretary not only endorses CFI's recommendation, but appears to go farther: the Secretary argues that the entire loan amount should be restored, "reduced only by those loan proceed payments that were made for legitimate plan purposes" (Pl.'s Mem. at 9).

We have reviewed the materials submitted by the parties, and we agree with CFI that the $16,888.29 in appraisal and legal fees should be restored to the plans. Defendants' records establish that all of the appraisal and legal fees at issue were paid between June 29, 2006 and September 25, 2006 (CFI's Reply, Ex. D) – long after the Court removed Mr. Klein as Trustee. To the extent that Mr. Klein was spending money on appraisals or legal fees in connection with zoning and condemnation issues relating to the Property after his removal as Trustee, he was doing that on his own watch and for his own purposes. He was not acting as a fiduciary for the plans or for the benefit of the participants. We therefore agree with the CFI recommendation to restore $16,888.29.

We decline, however, the Secretary's suggestion that we go farther and restore additional portions of the loan proceeds. The CC report shows that the other expenditures were largely for distribution to participants, real estate taxes and insurance. The CC report did not propose that the $13,227.67 in interest on the loans be restored to the plans, and we see no basis to disagree with CC on that point. Nor has the Secretary suggested which of these uses of the loan proceeds she contends were not for legitimate plan purposes. Thus, we decline to restore any more of the loan proceeds to the trust.[6]

## II.

CFI has provided an analysis of the tax ramifications of ordering repayment of the foregoing amounts to the trust, as well as the proper tax treatment and impact of distribution to participants of these restored amounts along with their pro rata share of the proceeds from the Property. We have reviewed the CFI analysis, and we are in agreement with it. Accordingly, at the time that distribution is made, the Court will make clear that even though the plan was officially terminated in 2005, at that time the plan did not have all assets to distribute because of Mr. Klein's breach of fiduciary duty in connection with the handling of the Property and because the restorative payments that we today ordered to be made were not available to be distributed at the time of termination. We will further make clear in that order that the distribution to participants constitute restorative payments of monies that they properly should have received at the time of the termination of the plan, and that the distribution does not represent additional contributions made on their behalf.

---

[6]Indeed, because it appears that (with the exception of the amounts restored for legal fees and appraisals) the loan proceeds were used for proper plan purposes, we find it unnecessary to address the argument by the Secretary that the loan itself was improper under Section 406(b)(1) (Pl.'s Mem. at 8-9).

## III.

By our order today, $169,061.29 will added to the funds currently being held in trust by CFI for ultimate distribution to the participants. The only remaining issue to be determined in deciding the total amount of money being held that will be distributed to the participants is for the Court to determine what portion of the amounts expended to date by CFI outlined above, and that we authorize in the future, should be charged to the participants (according to their participation interests) or, instead, should be paid by CDC and/or Mr. Klein. We invite CFI and the parties to submit memoranda directed to this issue. Any memoranda directed to this issue shall be submitted by September 28, 2006, and may not exceed five pages.

Once the total amount to be distributed is fixed, all that remains is for those funds to be distributed to the participants according to their participation share. In its report, CFI has made a recommendation as to the process to be followed for determining the final distribution to be made to each participant. CFI complains that it has found it difficult to obtain from defendants information showing the percentage interest of each participant in the plan. Based on the statements by lawyers during the various status conferences that have been held, it appears to the Court that there is merit in that complaint. In any event, we agree with CFI that, in the first instance, this is information that defendants must provide. Accordingly, we direct that by September 28, 2007, defendants produce to CFI: (1) a listing, for the period October 1, 1999 through September 30, 2005, of all participants and their respective participation interest on an annual basis, and (2) backup information

demonstrating the basis for that chart. We are hopeful that this information will provide the basis for making a final distribution to participants shortly.[7]

## CONCLUSION

For the foregoing reasons, the Court: (1) adopts the recommendation of CFI for restorative payments to the plan, and thus orders CDC to pay into the trust $169,061.29; (2) adopts the CFI analysis concerning the tax implications of the restorative payments made to the plan, and distributions of those restorative payments (plus the proceeds from the Property) to participants; (3) orders the parties to file any memoranda, limited to no more than five pages, by September 28, 2007, on the question of what payments made by CFI in pursuit of its responsibilities as independent fiduciary should be borne by the plan participants generally, or instead, by CDC and/or Mr. Klein; and (4) orders CDC and Mr. Klein to provide CFI, by September 28, 2007, the information described above, concerning the identity of participants and their shares in the plan, on a yearly basis, for the period October 1, 1999 through September 30, 2005.

ENTER:

/s/ Sidney I. Schenkier

SIDNEY I. SCHENKIER
United States Magistrate Judge

**Dated: September 14, 2007**

---

[7]CFI has recommended against making any interim distribution. Given that we are at a point where a final distribution may be possible in the foreseeable future, and given that we still have uncertainty about the percentage share of each participant, we agree with this recommendation.

11