

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

ELAINE L. CHAO, Secretary of Labor, )
United States Department of Labor, )
)
                 Plaintiff, ) No. 03 C 1792
) Magistrate Judge Schenkier
   v. )
)
CURRENT DEVELOPMENT CORPORATION, )
et al., )
)
                 Defendants. )

## MEMORANDUM OPINION AND ORDER

By an Order dated December 20, 2005, this Court removed defendant George Klein as Trustee of the ERISA trust in question, placed a constructive trust on certain property located in Westmont, Illinois ("the Property"), and granted plaintiff's request to appoint an independent fiduciary to replace Mr. Klein (doc. # 28). The Court appointed Consulting Fiduciaries, Inc. ("CFI") as independent fiduciary (doc. # 36). The Court took that action because it concluded that Mr. Klein breached his fiduciary duty to trust participants by, among other things, distributing proceeds of the trust upon its dissolution based on a $1.7 million valuation of the Property, without telling participants that he had an offer to sell the property for $2,307,000.00. On September 29, 2006, the Court approved the sale of the Property by CFI to the Village of Westmont for $2,572,501.00.

Those proceeds have not yet been distributed to the participants in the trust (who include Mr. Klein and his wife), but currently are being held in trust pending final distribution. Since the sale of the Property, the Court has approved payment of $196,450.68 in expenses incurred by CFI and other professionals engaged in connection with this matter (see 11/22/06 Mem. Op. and Order;

08/27/07 Mem. Op. and Order; 09/12/07 Minute Order). The Court ordered that Mr. Klein pay $105,242.39 of that amount (10/02/07 Minute Order). In addition, the Court has ordered Mr. Klein and CDC make payments into the trust totaling $169,061.29 to restore amounts that were improperly withdrawn by CDC (09/14/07 Mem. Op. and Order).

We now turn to the question of the distribution of the monies held in trust to the participants (which include Mr. Klein and his wife). On October 2, 2007, we asked the parties to submit their respective recommendations as to three points: (1) whether Mr. Klein and CDC should be required to pay prejudgment interest on the $169,061.29 that we ordered restored to the trust; (2) the calculation of the distributions to be made to participants; and (3) the amount to be withheld from the final distribution for payment of final expenses incurred by CFI. We now have received the parties' recommendations, and we set forth below our rulings on each of these questions.

I.

CFI seeks application of prejudgment interest on the restorative payment of $169,061.29 that we have required CDC and Mr. Klein to make, a position supported by the Secretary. Not surprisingly, defendants oppose that request.

The Supreme Court has made clear that "[p]rejudgment interest, of course, is 'an element of complete compensation.'" *Loeffler v. Frank*, 486 U.S. 549, 558 (1988) (citations omitted). The presumption that prejudgment interest will be awarded "specifically" applies in ERISA cases. *Fritcher v. Health Care Service Corp.*, 301 F.3d 811, 820 (7th Cir. 2002). Whether to award prejudgment interest in any particular case is "a question of fairness, lying within the court's sound discretion, to be answered by balancing the equities." *Id.* (citations omitted).

At the threshold, defendants argue that we should not consider awarding prejudgment interest

2

because CFI should have asked for that relief when the parties initially briefed the issue of whether any restorative payments should be made (Defs.' Resp. at 5). We reject that argument – we see no prejudice to defendants from the timing of the Court's consideration of this issue.

Defendants also argue that prejudgment interest should not be awarded on the restorative payments because those sums do not reflect the wrongful denial or ERISA benefits, as has been true in certain other cases in which prejudgment interest has been awarded, but instead constitute "expenses [that] were mistakenly charged to a plan" (Defs.' Resp. at 5). We do not find that argument persuasive. "'[B]ad faith is not the sole criterion when considering whether an award of prejudgment interest is appropriate.'" *Fritcher*, 301 F.3d at 820. Whether by mistake or design, CDC and Mr. Klein improperly withdrew funds for unauthorized use, thus depriving all participants of the benefit of those funds. Declining to award prejudgment interest on the restored funds would allow CDC and Mr. Klein to retain a benefit (in essence, an interest-free loan) at the expense of the participants. In these circumstances, we find that fairness counsels against allowing CDC and Mr. Klein to retain that benefit, and in favor of providing the participants with full compensation by awarding prejudgment interest.

In its proposed distribution, CFI appears to have calculated prejudgment interest using a rate of 6.67% compounded annually (CFI Mem. at 5, ¶ 5). Defendants do not object to the rate used, or to compounding being applied. On this latter point, we note that "compound prejudgment interest is the norm in federal litigation." *American Nat'l Fire Ins. Co. v. Yellow Freight Systems, Inc.*, 325 F.3d 934, 937-38 (7th Cir. 2003). Accordingly, we will require CDC and Mr. Klein to pay prejudgment interest, at the rate of 6.67% compounded annually, on the restorative payments. This amount will be added to the funds available in the trust for distribution to participants.

3

## II.

We now turn to the calculation of the distributions to be made to each participant. CFI has set forth in detail the manner in which it suggests that the calculation should be performed (CFI Mem. at 4-9). The Secretary endorses CFI's proposal. And, apart from their disagreement about prejudgment interest on the restorative payments, discussed above, defendants agree with CFI's methodology – or, at least, pose no objection to it. CFI and defendants disagree on only two points regarding the calculation of the distribution amounts.

*First*, CFI and defendants disagree about the valuation of the Property that should be used as of the time that defendants make the distribution to participants in September 2005: CFI argues that the figure of $1,490,493.00 should be used (CFI Reply at 4-5), while defendants argue that the figure of $1,700,000.00 should be used (Defs.' Mem. at 4-5). We find that defendants have the better of this argument. CFI points out that documents show that CDC valued the Property at $1,490,943.00 in a tax return for the reporting period ending September 30, 2004, and in a letter dated June 1, 2005 (CFI Reply at 5, Exs. I-J). However, the distribution to participants was made in September 2005, and CFI does not dispute defendants' assertion that the distribution at that time was made using an appraised value of $1,700,000.00 for the Property (Defs.' Mem. at 4). Defendants' argument also is consistent with the fact that in offering the participants the opportunity for a distribution, Mr. Klein advised them that the Property had an appraised value of $1,700,000.00.

CFI notes that using a $1,490,493.00 rather than the $1,700,000.00 valuation urged by defendants "results in a greater dollar amount of the appreciation in value [of the Property as reflected in the ultimate sale price of $2,572.501.00] being reallocated to participants" (CFI Reply at 4). However, the purpose of removing Mr. Klein as trustee and embarking upon the actions we

4

have thereafter taken over nearly the past two years has been to place the participants in the position they would have enjoyed but for Mr. Klein's breach of fiduciary duty – not to place them in a better position. In light of the evidence that the September 2005 distribution was made based on a valuation of the Property at $1,700,000.00, we find no legitimate basis to distribute the proceeds of the trust as if the prior distribution had been made based on a lesser valuation of the Property. Accordingly, we order that CFI recalculate the distribution using the figure of $1,700,000.00 as the valuation of the Property used in the September 2005 distribution.

*Second*, the parties dispute the handling of a payment of $69,351.33 to one participant, Ken Arneson. Defendants have offered evidence that Mr. Arneson received that sum as part of the September 2005 distribution (Defs. Resp. at 4 and Ex. J). CFI did not include that sum in calculating the distribution due to Mr. Arneson (CFI Reply, Ex. H), but says in its reply that this "fact will be reflected in a set-off from any final distribution made to Mr. Arneson" (CFI Reply at 5). We trust that by this statement, CFI means that it will include the $69,351.33 as a distribution that Mr. Arneson received in September 2005 when calculating the distributions to be made from the funds currently being held. So that there is no ambiguity about the question, that is what we now order.

### III.

Finally, CFI proposes that $95,000.00 be withheld from the distribution to cover estimated fees and expenses of CFI ($25,000.00); Crowe Chizek, an accounting and financial consulting firm retained by CFI to assist it in determining the proper distribution to the participants of the proceeds from the sale of the Property and what amounts, if any, should be restored to the trust by Mr. Klein ($25,000.00); and Pedersen & Houpt, the law firm the Court authorized CFI to hire for this matter

($45,000.00) (CFI Mem. at 11). Neither the Secretary nor defendants oppose that request. Accordingly, we will approve this hold back of $95,000.00 from the distribution to be made to participants.

We further order that this amount be held back from the distribution made to Mr. Klein. Under either CFI's or defendants' calculations (CFI Reply, Ex. H), it appears that Mr. Klein's final distribution will greatly exceed that amount. Moreover, any final payments to CFI, Crowe Chizek and Pedersen & Houpt will have been caused by the need to replace Mr. Klein as trustee. As with the previous payments to these entities, any future payments to them will be chargeable to Mr. Klein (*see* 10/02/07 Minute Order). Thus, we see no reason to delay the distribution to other participants of the full amount they will be entitled to receive based on a hold back for future payments that Mr. Klein, and not they, will be required to make.

## CONCLUSION

For the foregoing reasons, the Court: (1) orders that CDC and/or Mr. Klein pay prejudgment interest on the restorative payment of $169,061.29 that we earlier ordered, calculated at the rate of 6.67% compounded annually; (2) orders CFI to recalculate the final distributions to be made to participants, (a) using the figure of $1,700,000.00 as the value of the Property used for the September 2005 distribution, and (b) including a $69,351.33 distribution to Mr. Arneson in September 2005

when calculating the final distributions to be made from the funds currently being held; and (3) orders CFI to withhold from $95,000.00 from the distribution made to Mr. Klein, as a fund from which final payments may be made to CFI, Crow Chizek and Pedersen & Houpt.

ENTER:

SIDNEY I. SCHENKIER
United States Magistrate Judge

Dated: November 30, 2007