

# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

ELAINE L. CHAO, Secretary of Labor, )
United States Department of Labor, )
)
              Plaintiff, )   No. 03 C 1792
)   Magistrate Judge Schenkier
v. )
)
CURRENT DEVELOPMENT CORPORATION, )
*et al.*, )
)
              Defendants. )

## MEMORANDUM OPINION AND ORDER

By an Order dated December 20, 2005, this Court removed defendant George Klein as Trustee of the ERISA trust in question, placed a constructive trust on certain property located in the Village of Westmont, Illinois (the "Property"), and granted the Secretary of Labor's request to appoint an independent fiduciary to replace Mr. Klein (doc. # 28). We did so as a result of our determination that Mr. Klein breached his fiduciary duty to the former participants of two employee pension plans by disclosing that the Property had been appraised as having a fair market value of $1.7 million, while concealing that the Village had offered to pay $2,307,000.00 for it, and by calculating the final payout to participants based on a $1.7 million valuation. On September 26, 2006, the Court approved the sale of the Property by the court-appointed independent fiduciary, Consulting Fiduciaries, Inc. ("CFI"), to the Village for $2,572,501.00 (doc. # 67). Those proceeds have not yet been distributed to the former participants, and are still being held in a constructive trust pending final distribution.

In an Order dated November 30, 2007, this Court resolved several outstanding issues regarding the distribution of the monies held in the constructive trust to the former plan participants (doc. # 154: 11/30/07 Mem. Op. and Order). On December 27, 2007, the Court denied defendants' motion for reconsideration of that Order (doc. # 165). The Court then invited the parties to submit their proposals concerning the notice and related forms that would be provided to the former participants, as well as the amount of distribution each would receive. CFI, plaintiff and defendants each submitted their respective proposals.

CFI's submission showed that as of November 30, 2007, $2,280,609.00 was available for distribution – an amount that excluded: (a) interest earned after October 10, 2007, and (b) $95,000.00 to be withheld for payment of remaining professional fees (doc. # 188: CFI's Submission, Ex. 6). Under the distribution plan that CFI proposed, Mr. Klein and his wife would receive $1,699,880.27 of that amount. The remainder – $580,728.73 – would be distributed to 37 former participants. Most of those former participants (25) would receive less than $1,000.00 each; but, others would receive far more substantial sums, with one person receiving $258,073.28 (*Id.*). During a hearing on March 13, 2008, the Court adopted (with some modification) CFI's proposal, including its proposal for the amount of distribution to each participant (doc. # 194).

Prior to the March 13 hearing, on January 28, 2008, defendants had filed a notice of appeal (doc. # 172). After the Court orally adopted CFI's distribution proposal at the March 13 hearing, defendants orally moved to stay any sending of notice or distribution of trust proceeds pending resolution of the appeal. The Court granted that oral motion (*see* 03/13/08 Tr. at 23), and in its subsequent written order, stayed any further action on the distribution pending appeal (doc. #194).

Presently before the Court is CFI's motion for reconsideration of our decision to grant the stay (doc. # 195). Defendants persist in their request for a stay. For the reasons that follow, plaintiff's motion for reconsideration is granted. We dissolve the stay, and will permit CFI to go forward with sending notice and distributing funds to former participants.

I.

At the threshold, the parties dispute the character of the Court's March 13 distribution order. CFI argues that the distribution order was an order for injunctive relief, and thus the question concerning whether that order should be stayed is governed by Federal Rule of Civil Procedure 62(c). For their part, defendants argue that the distribution order was one for a money judgment, and thus consideration of the stay is governed by Federal Rule of Civil Procedure 62(d). We hold that CFI has the better of this argument.

The March 13 distribution order was the culmination of proceedings that originated in the Court's order of December 20, 2005, which granted plaintiff's motion to: (1) remove Mr. Klein as trustee; (2) impose a constructive trust over the Property; and (3) appoint an independent fiduciary to sell the Property and to distribute the proceeds to the former participants of the defendant plans. The Court granted that motion based on its conclusion that the undisputed, material facts established that Mr. Klein had breached his fiduciary duty to the plans' former participants, by inviting participants to cash out their interests in the plans on the basis for the Property having a valuation of $1.7 million without disclosing that the Village of Westmont had proposed to purchase the Property from Mr. Klein for $2,307,000.00. Through his actions, Mr. Klein was able to keep the Property for himself and his wife, and to cash out other participants in the plans based on a valuation of the Property that was $600,000.00 less than the sale price that Mr. Klein knew the Village was

willing to pay. The Court held that by engaging in this conduct, Mr. Klein breached the fiduciary duty that he owed to participants to act with "complete loyalty" to them, and with an "eye single" to their interests. *Leigh v. Engle*, 727 F.2d 113, 125 (7th Cir. 1984).

Thus, the Court's order removing Mr. Klein as trustee and imposing a constructive trust was taken to address this breach of fiduciary duty. Historically, courts have considered claims for breach of fiduciary duty to be matters heard at equity, and not at law. *See, e.g., Abbott v. Lockheed Martin Corp.*, No. 06-701, 2007 U.S. Dist. LEXIS 58930, *6 (S.D. Ill. Aug. 13, 2007); *Donovan v. Robbins*, 579 F. Supp. 817, 821 (N.D. Ill. 1984). Our orders approving the sale of the Property that was placed in the constructive trust, and approving the distribution of the proceeds of that sale to all former participants on a basis commensurate with their respective interests in the plans, were necessary to effectuate that equitable relief. The mere fact that the relief necessary to remedy the breach of fiduciary duty involves payment of money to individual participants does not transform this equitable action into one at law. *Great-West Life & Annuity Ins. Co. v. Knudsen*, 534 U.S. 204, 214-15 (2002); *Pereira v. France*, 413 F.3d 330, 339-40 (2d Cir. 2005).

Moreover, by imposing a constructive trust, we directed the transfer of control of the Property from Mr. Klein to the constructive trust for which CFI was appointed independent fiduciary. The Court's imposition of a constructive trust was, in substance, an injunctive order. *See Great-West Life*, 534 U.S. at 213 (a constructive trust involves a court "order[ing] a defendant to transfer title"). Again, a distribution order that effectuates the injunctive relief that we ordered by imposing the constructive trust is itself injunctive relief, the stay of which is governed by Rule 62(c).

We disagree with defendants' suggestion that the Court already has deemed the distribution order to be one for a money judgment (Defs.' Resp. at 10). In its comments from the bench during

the March 13 hearing, the Court analogized the case to one for a money judgment solely for the purpose of discussing why defendants might suffer irreparable harm if funds were distributed during the pendency of an appeal, the Court's distribution order was reversed, and defendants were then unable to recover the distributed funds from the participants (*see* 03/13/08 Tr. at 20-21). The Court explained that in a case where a plaintiff recovers a money judgment and seeks a stay, a plaintiff's concern over collectibility if the judgment is affirmed can be satisfied by requiring defendant to post an appeal bond or other security (*Id.* at 20). The Court observed that, in this case, the problem is not that the money in the constructive trust would be unavailable if the distribution was stayed and plaintiff later prevailed on appeal, but instead that if "money is distributed and plaintiff doesn't prevail on appeal, we can't have, . . . any assurance that we can recover what has been paid." (*Id.* at 21). Those comments in no way suggested, much less held, that the distribution order was the issuance of a money judgment, rather than an order effectuating other injunctive and equitable relief.

Thus, we hold that our March 13, 2008 distribution order was entered to effectuate the injunctive and equitable relief required to remedy Mr. Klein's breach of fiduciary duty. Accordingly, the standard we consider in determining whether that distribution order should be stayed pending appeal is supplied by Rule 62(c).[1]

---

[1] We note that CFI argues that defendants should not be able to seek a stay, whether under Rule 62(c) or 62(d), of the March 13, 2008 order. CFI argues that defendants appealed only the Court's December 27, 2007 order, which then merged into the final distribution order on March 13, 2008. CFI cites *Chaka v. Lane*, 894 F.2d 923, 925 (7th Cir. 1990), for the proposition that "[w]hen a notice of appeal specifies an interlocutory order that merged into the final decision, we shall treat it as limiting the appeal to questions raised by that order, to the exclusion of other possible decisions taken in the case" (CFI's Reply at 2-3 n.2). On the facts of this case, we do not find this argument persuasive. Defendants filed a notice of appeal from the December 27, 2007 order, in which the Court denied reconsideration of its November 30, 2007 order. That November 30 order, among other things, resolved certain disputes between the parties as to how the final distribution amounts would be calculated and "order[ed] CFI to recalculate the final distributions to be made to participants" (doc. # 154: 11/30/07 Mem. Op. and Order at 6). If defendants were to succeed on their appeal, that would plainly affect the Court's November 30, 2007 order requiring the final distribution to be calculated – and thus, of necessity, would likewise implicate the Court's March 13, 2008 order of a final distribution.

## II.

Rule 62(c) grants this Court the authority to suspend, modify, restore, or grant an injunction during the pendency of the appeal of an injunction. A Court's decision whether to stay an injunction pending appeal is a discretionary one, informed by consideration of the following factors:

> (1) whether the stay applicant has made a strong showing that he is likely to succeed on the merits; (2) whether the applicant will be irreparably injured absent a stay; (3) whether issuance of the stay will substantially injure the other parties' interested in the proceeding; and (4) where the public interest lies.

*Hilton v. Braunskill*, 481 U.S. 770, 776 (1987). The party seeking a stay has the burden of proving that these factors warrant a stay. *Id.*

The *Hilton* standards that guide consideration of a state pending appeal generally mirror the fact that the trial court considers in deciding whether to issue a preliminary injunction, but with an important exception: "[i]n the context of a stay pending appeal, where the applicant's arguments have already been evaluated on the success scale, the applicant must make a stronger threshold showing of likelihood of success to meet its burden." *Matter of Forty-Eight Insulations, Inc.*, 115 F.3d 1294, 1301 (7th Cir. 1997). Thus, to satisfy the first *Hilton* factor, defendants here must "demonstrate a substantial showing of likelihood of success, not merely the possibility of success[.]" *Id.* If defendants make that showing and a showing of irreparable harm in the absence of a stay, then we consider all four *Hilton* factors using a sliding scale approach. *Id.* at 1300-01. If defendants fail to make the requisite showing of likelihood of success, or irreparable harm, or both, the analysis must end there and the stay must be denied. *Id.* at 1301. With this framework in mind, we assess CFI's request that we reconsider our earlier ruling granting a motion to stay the distribution order.

## A.

We begin with consideration of the defendants' likelihood of success on appeal. As the Court indicated during the March 13, 2008 hearing, "I think my rulings were correct, or I wouldn't have made them" (03/13/08 Tr. at 16). That observation is in accord with observations made by other judges when faced with a motion to stay an order pending appeal. *See, e.g., Thomas v. City of Evanston*, 636 F. Supp. 587, 590 (N.D. Ill. 1986) ("[h]ad we thought an appeal would be successful, we would not have ruled as we did in the first place").

That said, we recognize the possibility that the appeals court may disagree with our rulings. Under *Hilton*, what we must consider is the strength of defendants' argument that this is likely to occur, keeping in mind that "[t]he likelihood of success on the merits standard requires something less than a 50% chance of success," *Harrington v. Heavy*, No. 04 C 5991, 2007 WL 257681, *1 (N.D. Ill. Jan. 23, 2007), but more than the "some" likelihood of success that may pass muster when a party seeks a preliminary injunction. *Matter of Forty-Eight Insulations, Inc.*, 115 F.3d at 1301. Defendants offer three arguments to show why the Court's rulings were in error, which we address in turn.

*First*, defendants argue that the Court erred in granting plaintiff's motion to remove Mr. Klein as trustee, and to impose a constructive trust, without holding an evidentiary hearing to resolve disputed facts (Defs.' Resp. at 5-8, 9). We consider this argument to be a weak one at best. While there were factual disputes raised by the written submissions of the parties, which included certain documents and declarations from Mr. Klein and from John Zemenak, an attorney for the Village, the *material* facts were not in dispute. On October 19, 2004, the Village offered to purchase the Property for $2,070,000.00, based on an appraisal it had obtained of the market value of that

7

Property. Mr. Klein had an appraisal of the Property done in March 2005 which showed a fair market value of $1.7 million. Nonetheless, in April 2005, Mr. Klein was able to negotiate with the Village for a purchase price of $2,307,000.00. When the sale did not close in June 2005 as contemplated, the Village thereafter renewed the proposal to purchase the Property for $2,307,000.00, a proposal that went by the boards because Mr. Klein insisted on a price of $2,395,000.00.

In the meantime, Mr. Klein sent a notice to the plans' participants dated April 28, 2005, advising them that they had the choice of receiving a final distribution from the plans entirely in cash, or part in cash and part in an undivided interest in the Property. Mr. Klein disclosed the $1.7 million valuation of the Property, but concealed the fact that the Village had made offers in excess of that amount. Indeed, all that Mr. Klein disclosed about other offers was that some had been made, but were "deemed inadequate" – which plainly suggested that they were in amount less than $1.7 million. Mr. Klein made these statements to the plan participants even though just three days earlier, on April 25, 2005, the Village had signed a real estate contract to buy the Property for $2,307,000.00. And, in calculating the amount that plan participants would receive if they took the final distribution in cash, Mr. Klein used a $1.7 million valuation of the Property rather than either of the higher offers the Village had made. No evidentiary hearing was required to determine that, based on these undisputed facts, Mr. Klein breached his fiduciary duty to the plan participants.

*Second*, defendants argue that Mr. Klein was within his rights to rely on the March 2005 fair market value appraisal of the Property at $1.7 million when he offered plan participants the option of closing out their accounts by receiving cash, or a mix of cash and a share of the Property (Defs.' Resp. at 8, 9). Again, we view this as a weak argument. As a fiduciary, Mr. Klein was not entitled

to rely on a fair market appraisal of the Property when, within a short time both before and after that appraisal was done, the Village offered to purchase the Property for a significantly greater amount of money. As a fiduciary, Mr. Klein certainly would have been within his rights to inform plan participants of both the $1.7 million fair market appraisal and the offers by the Village, and to explain to participants why the fair market appraisal was a more accurate assessment of the value of the Property than an amount that a willing buyer was willing to pay for it. As a fiduciary, he was not entitled to disclose only the $1.7 million appraisal and use it to calculate payments plan participants would receive, and to withhold from plan participants information about the higher offers to purchase the Property.

*Third*, defendants argue that Mr. Klein's actions did not cause the former plan participants to suffer any loss because there is no way of knowing whether they would have elected to take a portion of their final distributions in the form of shares in the Property had they known of the Village's offers (Defs.' Resp. at 10). This argument ignores that by his actions, Mr. Klein cheated the former plan participants of their right to have him, as fiduciary, act with "complete loyalty" and with a singular focus on their interests and not on his own. *Leigh*, 727 F.2d at 125. Mr. Klein induced the former plan participants to decide how they would take the proceeds from the termination of the plans on the basis of incomplete information: they did not know the Village was willing to purchase the Property for $2,307,000.00, more than $600,000.00 in excess of the $1.7 million valuation that Mr. Klein gave them for the Property. By so doing, Mr. Klein was able to keep the Property, which was more valuable than he had disclosed to the former plan participants. We do not need to know whether plan participants would have chosen to receive cash instead of a mix of cash and Property had they known the true facts.

9

What's more, there is another element to Mr. Klein's breach of fiduciary duty that plainly caused the participants economic loss. Mr. Klein determined the amount of money to be distributed to plan participants who elected cash based on giving the Property a value of $1.7 million, instead of the $2,307,000.00 that the Village had offered for it. As a result, Mr. Klein potentially underpaid the plan participants who received distributions by as much as $600,000.00. By granting the motion to remove Mr. Klein as trustee and to appoint an independent fiduciary, we sought to correct that underpayment by having the independent fiduciary sell the Property and distribute the amounts obtained in excess of $1.7 million (after deducting certain costs) to all former plan participants (including the Kleins) on the basis of their respective shares in the plans. We therefore reject defendants' argument that removal of Mr. Klein and imposition of the constructive trust were unnecessary on the ground that Mr. Klein's action did not harm the former plan participants.

Based on the foregoing analysis, we conclude that defendants have failed to "demonstrate a substantial showing of likelihood of success" on appeal. *Matter of Forty-Eight Insulations, Inc.*, 115 F.3d at 1301. Thus, defendants have failed to satisfy the first prerequisite under *Hilton* for obtaining a stay pending appeal.

### B.

Defendant's inability to show the requisite likelihood of success on appeal is, without more, sufficient reason for this Court to reconsider its order granting the motion for stay, and to dissolve the stay that we entered on March 13, 2008. In the interest of completeness, however, we briefly address the factor of irreparable harm, to explain why – upon reconsideration – we find that defendants also have failed to establish this threshold *Hilton* requirement for a stay.

At the March 13, 2008 hearing, we expressed the concern that once the funds were distributed, there would be no assurance that the former participants would return the funds to the constructive trust if defendants succeed on appeal. We continue to have that concern. However, upon reflection, we are not convinced that this *possible* harm constitutes irreparable harm. "It . . . is difficult to establish irreparable injury based on prospective monetary damages alone." *Arizona Contractors Ass'n, Inc. v. Candelaria*, CV 07-02496, CV 07-02518, 2008 WL 486002, *3 (D. Az. Feb. 19, 2008) (denying motion for a stay under Rule 62(c)).

In addition, CFI fairly observes that we cannot presume that the former participants who receive distributions would defy a court order to refund them if defendants succeed on appeal, and the return of some or all of the money distributed is required. To the extent that any former plan participants were to choose that course, the Court would have the authority to compel return of the money. The fact that such a course of action might be difficult or time consuming does not establish that recovery of the funds would be unavailable, or that harm from a distribution later reversed on appeal would be irreparable.[2] Thus, even if defendants were able to make the required showing of the likelihood of success on the merits, the request for stay should be reconsidered, and the stay should be dissolved, because defendants have failed to show irreparable harm.[3]

---

[2] CFI has argued that there are former participants in dire need of the money that would be distributed (CFI's Reply at 5-6). One might suggest that this shows that some participants might not just be unwilling to later return distributions that they receive, but would be unable to do so. However, the assertions by CFI (and the Secretary of Labor) that there are plan participants in desperate need of the distributions is unsupported by any evidence and we thus disregard them.

[3] In light of defendants' failure to establish either a strong likelihood of success on the merits or any irreparable harm, we need not address the final two *Hilton* factors.

11

## CONCLUSION

For the foregoing reasons, the Court grants CFI's motion for reconsideration of our issuance of a stay pending appeal (doc. # 195). The stay of the distribution order pending appeal (doc. # 194) is dissolved. However, the Court orders CFI to refrain from sending out any notices or from making any distributions for a period of 30 days, through June 2, 2008, in order to afford defendants an opportunity to seek a stay in the Appeals Court if they so choose.

**ENTER:**

*[signature]*

**SIDNEY I. SCHENKIER**
United States Magistrate Judge

Dated: May 2, 2008