MHN

# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| ELAINE L. CHAO, Secretary of Labor, United States Department of Labor, | )<br>)<br>) |
| Plaintiff, | ) No. 03 C 1792 |
| | ) Magistrate Judge Schenkier |
| v. | )<br>) |
| CURRENT DEVELOPMENT CORPORATION, *et al.*, | )<br>)<br>) |
| Defendants. | ) |

## MEMORANDUM OPINION AND ORDER

On December 20, 2005, this Court removed Defendant George Klein as trustee of the ERISA plans in question, placed a constructive trust on property located in Westmont, Illinois ("the Property") and granted plaintiff's request to appoint an independent fiduciary to replace Mr. Klein (doc. # 28). The Court took that action because it concluded that Mr. Klein had breached his fiduciary duty to trust participants by, among other things, distributing proceeds of the plans upon its dissolution based on a $1.7 million valuation of the Property without telling participants that he had an offer to sell the Property for $2,307,000.00. Shortly thereafter, on January 5, 2006, the Court appointed Consulting Fiduciaries, Inc. ("CFI") as independent fiduciary (doc. # 36). The Court authorized CFI to sell the Property, and to engage professionals to investigate whether Mr. Klein and/or Current Development Corporation ("CDC") improperly withdrew funds from the trust, and thus should be required to make restorative payments. In the 34 months that have passed since that appointment, CFI has succeeded in bringing a substantial sum of money into the constructive trust.

On September 29, 2006, the Court approved CFI's request to sell the Property for $2,572,501.00 (doc. # 67): nearly $900,000.00 more than the amount that Mr. Klein told former plan participants the Property was worth when he distributed plan proceeds. Morever, as a result of CFI's investigation (conducted with the aid of a forensic accounting firm, Crowe Chizek), on September 14, 2007, the Court ordered that Mr. Klein and CDC make payments to the constructive trust totaling $169,061.29 to restore amounts that were improperly withdrawn from the plans (doc. # 129). In a separate opinion dated November 30, 2007, the Court ordered that Mr. Klein pay prejudgment interest on that restorative payment at rate of 6.67 percent, compounded annually (doc. # 153). In that ruling, the Court also ordered CFI to calculate the final distributions to be made to the former participants, and authorized CFI to withhold $95,000.00 from Mr. Klein's distribution to serve as a fund from which to make final payment to CFI and other professionals that the Court authorized CFI to retain (Crowe Chizek and CFI's attorneys, Pederson & Houpt).

On January 28, 2008, prior to CFI's submission of the proposed final distribution plan, defendants filed a notice of appeal (doc. # 172). After various extensions of time sought by both parties and granted by the Court (*see* doc. ## 165, 169, 182), CFI submitted a proposed distribution plan on February 29, 2008 (doc. # 188). After full briefing, on March 13, 2008, the Court -- with certain modifications – approved the distribution plan. That plan provided for distribution of $2,280,609.00 held in the constructive trust: that amount reflected (1) proceeds from the sale of the Property, restorative payments ordered by the Court, and prejudgment interest on those restorative payments, (2) accrued interest on those funds, (3) reduced by payments that the Court authorized CFI to make for services that CFI and others rendered. We also approved the methodology for

determining how much each former participant would receive, and CFI's calculation of the amount of each distribution.

Pursuant to the approved methodology, the substantial majority of the $2,280,609.00 then available for distribution – $1,699,880.27 – would have been paid out to Mr. Klein (less the $95,000 withheld to pay fees and costs) and his wife. The remaining $580,728.73 would have been distributed to the 37 other former participants in the plans. In the March 13 ruling, the Court also approved the form of notice and other documents to be included in a distribution package sent to former participants. However, in light of the pending appeal, the Court decided to stay any distribution.

Neither side was fully satisfied with the Court's March 13 ruling. Defendants sought reconsideration of the order approving CFI's proposal as to the amounts to be distributed; on March 31, 2008, the Court denied that motion for reconsideration (doc. # 207). CFI moved for reconsideration of the stay order; on May 2, 2008, the Court granted that motion to reconsider and dissolved the stay pending appeal (doc. # 219). But, the Court ordered CFI to refrain from sending notices or making distributions through June 2, 2008, in order to give defendants an opportunity to seek a stay from the appeals court.

Defendants did not seek a stay pending appeal by June 2. However, before CFI took any action to make distributions to the former participants, on July 9, 2008, defendants sought a stay in the appeals court. In an order dated August 12, 2008, the appeals court denied the motion for stay. After that denial, and the Court's October 10, 2008 order setting the matter for a status hearing (doc. # 228), on October 13, 2008, CFI filed a motion to approve revised distribution calculations to former participants (doc. # 229). The motion asks to revise the March 13, 2008 distribution order

3

in four ways. *First*, CFI seeks to increase the final distributions in order to account for interest on the $2,280,609.00 that has accrued since the March 13 order. *Second*, CFI proposes amendments to the distribution letter that the Court had approved on March 13. *Third*, CFI seeks approval to enter into a rollover agreement with First American Bank, which holds the funds in the constructive trust, which would allow the bank to establish Individual Retirement Accounts ("IRAs") in the name of any former participant who does not reply to the distribution letter. *Fourth*, CFI asks for authority to withhold any distribution to Mr. Klein at this time, in order to secure payment of final costs which CFI says have substantially increased since the Court approved a hold back of $95,000.00 from Mr. Klein's distribution.

The Court heard argument on the motion on October 16, 2008. At that time, defendants objected to these proposed revisions. During the hearing, the Court authorized minor, grammatical revisions to the distribution letter, but rejected the substantive changes sought by CFI. With respect to the remaining three issues, the Court allowed the parties to submit briefs setting forth their respective positions (doc. # 231). We have now received the briefs we requested (doc. ## 232, 234, 236), as well as sur-replies by defendants (doc. # 238), the Secretary (doc. # 241), and CFI (doc. # 242). Our rulings on CFI's requests are set forth below.

I.

There can be no question that in light of the appeals court's order denying defendants' motion to stay the distribution order, the Court has full authority to authorize CFI to proceed with the distribution of proceeds to the former participants. It is also undisputed that the $2,280,609.00 available for distribution as of the March 13, 2008 order has increased as the result of the accrual of interest: $65,797.21 as of July 30, 2008, and certainly even more by now. CFI's proposal is simply

4

that this additional interest be included in the distribution to former participants, in the same percentage allocation as used in the earlier distribution formula (CFI's Motion, at 3). The arguments that defendants offer to resist this commonsense request are unconvincing.

*First*, defendants argue that the pendency of the appeal strips this Court of authority to modify its previous distribution order to include the payment of accrued interest (Defs.' Resp. at 3-4). However, it is well settled that the pendency of an appeal does not rob the Court of the authority to "wrap up unfinished business," so long as the district court's activities do not affect "aspects of the case involved in the appeal." *Albiero v. City of Kankakee*, 122 F.3d 417, 418 (7th Cir. 1997). Adjusting the distribution amounts to reflect the accrual of interest is the kind of "unfinished business" that the Court is authorized to address during the pendency of an appeal. Indeed, if distribution of the amounts pursuant to the March 13, 2008 order is within the Court's jurisdiction (and defendants do not claim otherwise), then it is equally within the Court's jurisdiction to adjust those distribution amounts to reflect interest that has accrued since that time. Such an adjustment is precisely the kind of ministerial act, requiring a simple calculation using the methodology already approved by the Court, that is well within our authority.

*Second*, defendants argue that dealing with accrued interest is a "problem" of CFI's own making, because CFI should have promptly made the distributions once CFI had not filed a motion for stay pending appeal by June 2, 2008 (Defs.' Resp. at 2). We will not criticize CFI for showing forbearance when defendants failed to file a motion for stay pending appeal by June 2, in light of the fact that five weeks later defendants did seek a stay in the appeals court. Moreover, we note that even had CFI sought to make the distribution as of June 3, we still would have been required to confront the question of what to do about interest that had accrued since the March 13 order: there

just would have been a smaller amount of interest. And, if CFI had sought to add that interest to a distribution it sought to make at that time, defendants presumably would have made the same argument then that they make now. In any event, any quarrel about the speed with which CFI acted does not call into question the Court's authority to include the accrued interest in the distribution, and does not provide a good reason to delay distribution of that accrued interest to the participants.

*Third*, defendants argue that the former participants are entitled not to accrued interest but instead should be given post-judgment interest, and that the complexity of calculating post-judgment interest would require more than ministerial acts and thus would be outside the Court's authority while the appeal is pending (Defs.' Resp. at 4-5). We disagree. Post-judgment interest under 28 U.S.C. § 1961 is "allowed on any money judgment." The Court's March 13 order did not constitute, in our view, a "money judgment." Rather, it determined the distribution of funds from a constructive trust created by earlier rulings of the Court, a fund that was to be distributed in equity to the former participants who had been short changed by Mr. Klein's breaches of his fiduciary duty as trustee.

Moreover, we are left to wonder why counsel for Mr. Klein and CDC would make an argument that, if accepted, would expose those defendants to an obligation to pay that post-judgment interest. We doubt that these defendants truly wish to shoulder further financial obligations to the former participants. That leads us to suspect that defendants' argument on this score not only is without merit, but also that it was interposed in an attempt to further delay distributions that the former participants are entitled to receive now.[1]

---

[1] Similarly, we view defendants' suggestion that CFI may have breached its fiduciary duty by not making a distribution earlier (Defs.' Resp. at 4) with a large grain of salt. Nothing in defendants' conduct of this litigation suggests that they ever have been interested in expediting the resolution of this case, so as to ensure prompt payment of any

6

For the foregoing reasons, the Court rejects the defendants' objections to the revised distribution. The Court authorizes CFI to make distributions to the former participants in the amounts approved by the Court in the March 13, 2008 order, increased to reflect each former participant's pro rata share of accrued interest since that time.[2]

## II.

CFI seeks the Court's approval to enter into a Safe Harbor IRA Rollover Agreement with First American Bank, the institution that holds the money that is in the constructive trust that will be distributed to the participants. The purpose of establishing this safe harbor agreement is to allow for the handling of any monies that are not claimed by former participants in a reasonably timely manner. The safe harbor agreement will allow any such unclaimed monies to be placed into a tax deferred rollover account. That will allow CFI to close out the constructive trust and bring its work to an end, while at the same time allowing former participants who do not promptly claim their distributions to have access to those funds in the future without the loss of beneficial tax treatment. This request, which is designed to protect the interests of the former participants, is an eminently reasonable one.

Nonetheless, defendants object to this request. They argue that if the original ERISA plans do not exist, then the payments are not eligible for rollover into safe harbor IRAs (Defs.' Resp. at 5). They alternatively argue that if the original ERISA plans still exist, then they have lost their plan qualification because CFI failed to file interim amendments on a timely basis (*Id.* at 6-7).

---

distributions that might be made. To the contrary, defendants have been unflagging in their efforts to erect every barrier to CFI's ability to make distributions. That said, any criticisms defendants may have of CFI on this score do not affect the Court's authority to authorize CFI to go forward with the distributions, and to include accrued interest in them.

[2]The only exception will be with respect to the distribution to Mr. Klein, which will be reduced in the manner set forth below (*see* pages 9-11, *infra*).

7

There is no question that the ERISA plans have been terminated, as Mr. Klein admitted in a brief filed nearly three years ago (*see* CFI's Sur-reply at 3 n.2 and Ex. E at 3). Thus, defendants' ruminations about what would be required if the plans still existed are of no consequence. We consider only defendants' argument that the funds in the constructive trust are not entitled to tax deferred treatment on distribution because the original ERISA plans have been terminated.

That argument, which defendants make in one sentence without elaboration (Defs.' Resp. at 5), ignores that the Court fully addressed this issue more than one year ago. On May 30, 2007, at the Court's direction, CFI filed a report and recommendation that addressed, among other things, the appropriate tax treatment of distributions from the constructive trust (doc. # 100). CFI concluded as follows:

> [T]o the extent that the Court rules that certain payments are required to be restored to the Constructive Trust as a result of [a] finding by the Court of distributions from the Plan that had been made in violation of ERISA or damages were incurred by the Plan as a result of a breach of fiduciary duty, those payments should constitute "restorative payments." The Constructive Trust should be deemed a wasting trust forming a part of the terminated Plan and distributions of restorative payments to former participants in the Plan as a result of a court order should be eligible for tax deferred rollover treatment under Section 402(c) of the Internal Revenue Code.

(doc. # 100; CFI's Report and Recommendations, at 7). On August 22, 2007, defendants filed an objection to CFI's report and recommendation (doc. # 120), in which they disagreed with certain of CFI's findings and recommendations: but *not* with CFI's recommendation concerning the tax treatment of distributions from the constructive trust.

On September 14, 2008, the Court accepted CFI's analysis and conclusion regarding the proper tax treatment of distributions from the constructive trust:

8

> CFI has provided an analysis of the tax ramifications of ordering repayment of the foregoing amounts to the trust, as well as the proper tax treatment and impact of distribution to participants of those restorative amounts along with their pro rata share of the proceeds of the Property. We have reviewed the CFI analysis, and we are in agreement with it. Accordingly, at the time the distribution is made, the Court will make clear that even though the Plan was officially terminated in 2005, at that time the Plan did not have all assets to distribute because of Mr. Klein's breach of fiduciary duty in connection with the handling of the Property and because the restorative payments that we today ordered to be made were not available to be distributed at the time of termination. We will further make clear in that order that the distribution to participants constitute restorative payments of monies that they properly should have received at the time of the termination of the Plan, and that the distribution does not represent additional contributions made on their behalf.

(doc. # 129: Mem. Op. and Order at 9). Defendants offer no reason -- and we see none -- to question the analysis that CFI supplied in May 2007, that defendants failed to challenge at that time, and that the Court adopted in September 2007. We therefore approve CFI's request to enter into a Safe Harbor IRA Rollover Agreement with First American Bank, in the form attached as Exhibit C to CFI's motion to approve revised distribution calculations (doc. # 229).

### III.

Finally, we address the amount to be withheld from the distribution to Mr. Klein. Pursuant to the March 13, 2008 order, Mr. Klein stands to receive distributions from four accounts. The amounts of those accounts, as set forth in the March 13 order, totaled $1,110,421.49, with the following amounts in each of the accounts: (a) GP Klein Account -- $361,526.53; (b) GP Klein (Rollover) Account -- $32,222.00; (c) GP Klein (Rollover-Formerly Directed) -- $334,533.80; and (d) GP Klein (Formerly Directed) -- $372,139.16. Those amounts will now be increased, because of the addition of accrued interest.

In its November 30, 2007 ruling, the Court held that any future payments to CFI, Pederson & Houpt, and Crowe Chizek would be chargeable to Mr. Klein (doc. # 154: Mem. Op. and Order at 6). The Court also authorized CFI to withhold $95,000.00 from any distributions to Mr. Klein, in order to provide a fund for final payment for services rendered by CFI and the professionals whom it retained (*Id.* at 5-6). CFI proposed that level of withholding based on estimated fees and expenses of $25,000.00 for CFI, $25,000.00 for Crowe Chizek, and $45,000.00 for Pederson & Houpt (*Id.* at 5). Defendants posed no objections to the withholding from Mr. Klein's distribution.

In its motion to approve revised distribution calculations, CFI now asks for the approval to withhold the entire distribution to Mr. Klein as security for those final payments (doc. # 229: CFI's Motion at 4). As a basis for that request, CFI points to the fact that the pendency of the appeal and other matters have increased the outstanding fees and costs for CFI (and its professionals) to more than $200,000.00 (*Id.*). Since that time, CFI has filed a petition for payment of fees and costs (doc. # 244), that puts a finer point on that statement. CFI says that actual fees and expenses through September 2008 are $262,390.34, broken down as follows: $30,000.84 for CFI, $33,555.50 for Crowe Chizek, and $198,834.00 for Pederson & Houpt (doc. # 244: CFI's Petition at 1).

As we stated on the record during the October 16 hearing, there is no reason to withhold from Mr. Klein the distribution of more than $1 million in order to secure fees and costs that currently are claimed to be $262,000.00 but, as counsel for CFI acknowledged, would not likely much exceed $300,000.00. However, plainly the projection of fees and costs that formed the basis of our November 30, 2007 ruling has proven to be far too low. CFI's fees and costs have substantially increased as a result of proceedings on appeal, as well as proceedings in this Court: since the

November 30, 2007 ruling, the district court docket sheet records 89 entries, which reflect numerous motions, briefs, and court appearances.

Thus, we conclude that it is reasonable to increase the amount that is held back from Mr. Klein's distribution from the $95,000.00 authorized on November 30, 2007. We therefore authorize CFI to withhold from the distribution the funds in the GP Klein (Rollover-Formerly Directed) account, which should provide an amount sufficient to ensure prompt payment of any fees and costs that we order Mr. Klein to pay.

In so ruling, we have considered defendants' argument that the pending appeal robs us of the authority to increase the amount of money withheld from Mr. Klein's distribution (Defs.' Resp. at 5). We disagree. Addressing issues of attorneys' fees and costs are a part of the "unfinished business" that a court may "wrap up" while an appeal takes place. *Albiero*, 122 F.3d at 418. By authorizing CFI to hold back an amount from Mr. Klein's distribution in contemplation of an award of fees and costs, we do not at this time address whether the amount of fees and costs that CFI seeks are necessary and reasonable. Rather, we simply hold back the amount in question to insure that there will be a fund available to insure prompt payment of any fees and costs that we order paid.

## CONCLUSION

For the reasons set forth above, we grant CFI's motion to approve revised distribution calculations (doc. # 229): (a) CFI shall increase the amount of the distributions to account for interest accrued since the March 13, 2008 order; (b) CFI may amend the letter to former participants in the manner set forth on the record during the October 16, 2008 hearing; (c) CFI is authorized to enter into a Safe Harbor IRA Rollover Agreement with First American Bank, so that any distributions that are not claimed by a former participant may be placed into a tax-deferred account

that the former participant may access in the future; and (d) CFI is authorized to withhold from the distribution to Mr. Klein the funds labeled as GP Klein (Rollover-Formerly Directed), as a fund to be applied to satisfy fees and costs that the Court orders Mr. Klein to pay.

The distribution packages shall be sent to the former participants by November 21, 2008. By November 13, 2008, CFI shall provide defense counsel (and the Court) with the final version of the notice letter to participants. By noon on November 17, 2008, defense counsel shall inform CFI (and the Court) in writing of any contention that the letter fails to comply with the Court's earlier rulings. The matter is set for a status hearing on November 18, 2008, at 9:00 a.m.

ENTER:

SIDNEY I. SCHENKIER
United States Magistrate Judge

Dated: November 10, 2008