

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| ELAINE L. CHAO, Secretary of Labor, | ) | |
| United States Department of Labor, | ) | |
| | ) | **Case No. 03 C 1792** |
| Plaintiff, | ) | |
| | ) | **Magistrate Judge Sidney I. Schenkier** |
| v. | ) | |
| | ) | |
| CURRENT DEVELOPMENT | ) | |
| CORPORATION, *et al.*, | ) | |
| | ) | |
| Defendants. | ) | |

## <u>MEMORANDUM OPINION AND ORDER</u>

Plaintiff Elaine L. Chao, Secretary of Labor ("Secretary" or "plaintiff") filed this action against defendants Current Development Corporation ("CDC") and George P. Klein, Jr. ("Mr. Klein"), individually and as trustee of the certain plans established under ERISA, 29 U.S.C. §§ 404(a)(1)(A), 405(a), 406(a)(1)(D), and 406(b)(1) (doc. # 1: Compl.). On June 17, 2003, by consent of all parties and pursuant to 28 U.S.C. § 636(c), the case was assigned to this Court for all proceedings, including entry of final judgment (doc. # 7).

On December 20, 2005, this Court removed Mr. Klein as trustee, placed a constructive trust on property located in Westmont, Illinois ("the Property"), and granted plaintiff's request to appoint an independent fiduciary to replace Mr. Klein (doc. # 28). The Court took that action upon concluding that Mr. Klein had breached his fiduciary duty to the former plan participants by, among other things, distributing proceeds of the plans upon dissolution based on a $1.7 million valuation of the Property without telling participants that he had an offer to sell the Property for $2,307,000. On January 5, 2006, the Court appointed Consulting Fiduciaries, Inc. ("CFI") as independent fiduciary (doc. # 36). The Court authorized CFI to sell the Property and to engage professionals to

investigate whether Mr. Klein and/or CDC improperly withdrew funds from the plans and thus should be required to make restorative payments. As a result of the efforts of CFI and the professionals it has engaged, more than $2.75 million dollars has been brought into the constructive trust. *Chao v. Current Dev. Corp.*, 03 C 1792, 2008 WL 4899431, at *1 (N.D. Ill. Nov. 10, 2008).

Presently before the Court is CFI's motion for interim payment of fees and costs (doc. # 244). In this petition, CFI seeks payment for the period from June 2007 through September 2008 as follows: (1) $30,000.84 for services rendered by CFI; (2) $198,834.00 for services by Pedersen & Haupt, P.C. ("Pedersen"), a law firm that the Court authorized CFI to retain to represent CFI in its role as independent fiduciary, and (3) $33,555.50 for services by Crowe Chizek, now known as Crowe Horwath (referred to throughout as "Crowe"), an accounting and financial consulting firm retained by CFI to assist it in determining what amounts, if any, should be restored to the trust by Mr. Klein, as well as the proper distribution to plan participants of the proceeds in the constructive trust. In a supplement to the petition, CFI seeks approval to make a payment of $6,500.00 to First American Bank ("First American"), which CFI engaged to handle distribution of trust proceeds to former plan participants (doc. # 254). CFI further asks that these payments be made out of Mr. Klein's share of the funds in the constructive trust, and that they not be borne by other former participants (CFI Pet. at 1-2).

For the reasons set forth below, we authorize CFI to make $229,970.25 in payments, to be distributed as follows: (1) $29,500.84 to CFI; (2) $29,028.00 to Crowe; (3) $164,941.41 to Pedersen; and (4) $6,500.00 to First American. We also order that those payments be made by Mr. Klein's funds currently held in the trust.

2

**I.**

In considering the requests for payment, we do not write on a clean slate. The Court previously has issued a number of opinions authorizing payments to CFI and the other professionals who have worked on this matter – some of those payments to be made from funds in the trust, and some to be borne by Mr. Klein and CDC. We briefly summarize those payments below.

The Court first approved an interim payment of fees for services rendered by CFI on November 22, 2006. *Chao v. Current Dev. Corp.*, 03 C 1792, 2006 WL 3422195 (N.D. Ill. Nov. 22, 2006). At that time, we authorized CFI to make payments totaling $138,036.61, which included: (1) $9,573.50 to Lyons & Caron ("L & C"), real estate counsel CFI retained to assist with the sale of the Property; (2) $76,500.00 in commissions to the real estate broker CFI retained to assist with the sale of the Property; and (3) $37,007.82 to CFI for its services to date; and (4) $14,9555.29 for fees incurred by Crowe. The Court approved payment for CFI's services at its requested rate of $350.00 per hour and for services provided by Hugh Reynolds of Crowe at a rate of $350.00 per hour, down from the $390.00 hourly rate requested. *Id.* at *2-3.[1]

On August 27, 2007, the Court approved a second request by CFI for interim payments for services performed from late September 2006 through May 2007. *Chao v. Current Dev. Corp.*, 03 C 1792, 2007 WL 2484338 (N.D. Ill. Aug. 27, 2007). The Court authorized CFI to make $13,236.68 in payments, as follows: (1) $2,234.89 to L & C; (2) $9,300.18 to Crowe; and (3) $11,701.61 to CFI. *Id.* at *2-5. The Court declined to decide what interim compensation should be paid to Pedersen,

---

[1] We summarize here only our rulings concerning payment of fees for services, and who should be responsible for making those payments. In the three years since the removal of Mr. Klein as trustee, we have had occasion to issue other memorandum opinions and orders, as well as numerous other written orders. *See, e.g., Chao*, 2008 WL 4899431; *Chao v. Current Dev. Corp.*, 2008 WL 4681976 (N.D. Ill. May 2, 2008); *Chao v. Current Dev. Corp.*, 2007 WL 4300481 (N.D. Ill. Nov. 30, 2007). We assume familiarity with those prior rulings, and will refer to them only as necessary to understanding our rulings in this opinion.

3

because CFI did not provide information about the experience and background of some of Pedersen's attorneys or the rates that Pedersen normally charges clients for the services of these attorneys. *Id.* at *8.

CFI subsequently submitted additional information to substantiate the request for Pedersen's compensation, and on September 12, 2007, the Court authorized CFI to pay Pedersen $35,177.39 in attorneys' fees and costs (doc. # 128: 09/12/07 Min. Order). The Court found that CFI's submission established that the rates sought for Pedersen's legal personnel were rates that Pedersen customarily charges other clients of the firm, and that Pedersen's other clients typically pay those rates (*id.* at 2). The Court approved payment to Pedersen at the following hourly rates, which reflected 2006 rates and did not include an increase in rates implemented as of January 1, 2007: (1) $385.00 for Arthur Holtzman (rather than the $395.00 rate sought); (2) $365.00 for Paul Altman (rather than the $375.00 rate sought); (3) $305.00 David Solomon (rather than the $315.00 rate sought); (4) $250.00 an hour for Joshua Bernstein; and (5) $170.00 an hour for Rebekah Farrington, a paralegal (rather than the $180.00 rate sought).

The Court declined to recompense Pedersen for its Lexis/Nexis fees, because CFI's submission did not establish whether Pedersen's charges for Lexis/Nexis were reasonable. The submission did not show the amount of computer time spent that generated the cost, or how Pedersen calculated the cost (09/12/07 Min. Order at 2). Nevertheless, the Court held that since the fee award was an interim one, Pedersen was free to seek compensation for the Lexis/Nexis charges when it made its final request for compensation (*id.*).

Thereafter, on October 2, 2007, the Court ruled that of the $196,450.68 in fees and costs that the Court had approved to date, $91,208.39 should be borne by all participants according to their

4

shares in the trust account, as those costs would have been incurred even had Mr. Klein not been removed as trustee (doc. # 138: 10/2/07 Min. Entry). The Court ordered that the remaining $105,242.39 be paid by Mr. Klein, as that amount represented costs incurred as a result of Mr. Klein's removal as trustee due to his breach of fiduciary duty (id.). More recently, on November 10, 2008, we ordered the distribution of trust proceeds to be made to former participants (including Mr. Klein), but authorized CFI to withhold from that distribution monies attributable to the GP Klein (Rollover-Formerly Directed) account, totaling $334,533.80, to ensure the availability of funds sufficient to satisfy any further fees and costs that Mr. Klein would be required to pay. *Chao*, 2008 WL 4899431, at *6-7.

## II.

Before addressing CFI's specific fee requests, we consider two threshold matters: the standard by which to judge CFI's request for payment and the timeliness of CFI's request. We address each of those matters in turn.

### A.

We have previously addressed the standard by which to judge CFI's request for compensation. As this Court has previously held, the standard requires us to determine if the payment sought is necessary, and whether the amount of payment sought is reasonable. *Chao*, 2007 WL 2484338, at *2. Further, the Court recognizes that in discharging its fiduciary responsibilities, CFI may wish to "exercise special care to conduct a thorough factual and legal investigation, so as to best insure that the participants receive distribution of all funds to which they are entitled – both from the proceeds of the sale of the Property and from recovery of amounts that Mr. Klein may have improperly withdrawn from the trust." *Id.* The Court takes these factors into consideration in

5

deciding whether actions taken by CFI, Crowe, Pedersen, and First American were necessary, and whether the expenses incurred in pursuing those matters were reasonable.

**B.**

We next consider defendants' argument that CFI's Petition should be completely barred because it is both too late and too early. *First,* defendants claim that under Federal Rule of Civil Procedure 54(d)(2)(B) and Local Rules 54.1 and 54.3, CFI waited too long to seek any fees or costs incurred prior to March 13, 2008, because CFI did not file its petition for fees within 90 days after the Court's March 13, 2008 order approving CFI's plan for distributing funds in the constructive trust to former participants (doc. # 258: Defs.' Objections to CFI's Pet. at 2-3). *Second,* defendants argue that as to any fees and costs incurred since March 13, 2008, the petition comes too soon, because their appeal of this Court's March 13, 2008 ruling remains pending (*id.* at 4). Neither argument has any merit.

Insofar as it seeks fees and costs incurred before March 13, 2008, CFI's petition is not too late. Local Rule 54, on which defendants rely, applies to fee motions that are "based on" a particular judgment or a settlement of the underlying merits dispute. Local Rules, United States District Court for the Northern District of Illinois ("LR") 54.3(e). But, CFI's fee petition is not "based on" the Court's March 13, 2008 order. That order was one of many orders that this Court issued to correct the breach of fiduciary duty that led the Court to remove Mr. Klein as trustee in December 2005. CFI's current petition, like CFI's other two interim fee petitions, is based on this Court's January 5, 2006 Order that CFI shall present to the Court a detailed application for payment of its fees and expenses, which shall all be paid by Mr. Klein if they were incurred because Mr. Klein is no longer trustee (doc. # 36). CFI was no more late in filing the current petition than it was in seeking

6

payments pursuant to the two earlier interim petitions – which defendants did not challenge as untimely.

As to fees and costs incurred after March 13, 2008, the pending appeal does not render CFI's petition premature. As we have previously observed, "it is well settled that the pendency of an appeal does not rob the Court of the authority to 'wrap up unfinished business,' so long as the district court's activities do not affect 'aspects of the case involved in the appeal.'" *Chao*, 2008 WL 4899431, at *3 (quoting *Albiero v. City of Kankakee*, 122 F.3d 417, 418 (7th Cir. 1997)). Deciding fee issues is included among the categories of "unfinished business" that we may address during the pending appeal. *WMS Gaming Inc. v. WPC Prods. Ltd.*, 542 F.3d 601, 605 (7th Cir. 2008); *see also Budinich v. Becton Dickinson and Co.*, 486 U.S. 196, 200 (1988) ("As a general matter, at least, we think it indisputable that a claim for attorney's fees is not part of the merits of the action to which the fees pertain"). Indeed, "[o]ne who waits for the award of fees accordingly may forfeit review of the merits." *Dunn v. Truck World, Inc.*, 929 F.2d 311, 312 (7th Cir. 1991).

Defendants also argue that we may not compensate CFI's attorneys for their work on appeal unless and until the appeal is decided in CFI's favor (Defs.' Objections to CFI's Pet. at 4). However, in the two cases on which they rely for that proposition – *Sullivan v. William A. Randolph, Inc.*, 504 F.3d 665, 672 (7th Cir. 2007), and *Helfrich v. Carle Clinic Ass'n, P.C.*, 328 F.3d 915, 919 (7th Cir. 2003) – the purpose of the fee awards was to shift the cost of litigation to the losing party pursuant to a fee-shifting statute, in those cases, the plaintiffs – appellants. That is not the purpose of the fee awards here. We have required defendants to pay for costs incurred by the independent fiduciary, including attorneys' fees, that resulted from the need to remove Mr. Klein as trustee due to his already-determined breaches of fiduciary duty. Those costs must be borne by Mr. Klein in order to

7

prevent the former participants, whom Mr. Klein shortchanged in the initial distributions, from being further injured. When defendants appealed a judgment of this Court in favor of plaintiff, CFI and its attorneys were compelled to respond to defendants' appeal, incurring costs that would not have arisen but for Mr. Klein's breaches of fiduciary duty and his resultant removal as trustee. Therefore, the Court finds that CFI's Petition is timely.

## III.

With these preliminary matters decided, we now consider the merits of CFI's petition. We begin with several general objections that defendants raise to CFI's petition, which apply to both CFI's and Pedersen's fee requests.

*First*, defendants argue that CFI and Pedersen improperly use block billing, and this Court should deny all requests for fees that employ this method. We reject that argument. As this Court previously held, "[s]o long as the billing statement reasonably sets forth the dates of work, description of work, total hours expended, and total cost for task, the use of block billing does not preclude an award of fees." *Chao*, 2007 WL 2484338, at *3 (citing *Farfaras v. Citizens Bank and Trust of Chicago*, 433 F.3d 558, 569 (7th Cir. 2006)). We find that CFI's and Pedersen's time records generally meet these requirements.

*Second*, defendants argue that this Court should deny any request for fees based on time that is recorded in billing increments of .25 hours (Def.'s Objections to CFI's Pet. at 7). Contrary to defendants' arguments, there is nothing inherently objectionable to CFI's billing in increments of .25 hours. Courts in this district have approved the practice of quarter-hour billing. *See, e.g., Lopez v. City of Chicago*, No. 01 C 1823, 2007 WL 4162805, at *7 (N.D. Ill. Nov. 20, 2007); *Welsh v. Halter*, No. 99 C 8049, 2004 WL 1595249, at *3 (N.D. Ill. July 14, 2004). Moreover, in this case,

8

the Court previously approved CFI's requests for payments for its time and that of Pedersen based on billing records using increments of .25 hours. *See, e.g., Chao*, 2007 WL 2484338, at \*4-5. Defendants offer no reason why the Court should revisit this issue. We therefore deny defendants' request that we reject all of CFI's requests for fees that are based on time recorded in increments of .25 hours.

Having resolved these general objections, we now address CFI's specific requests for compensation for itself, Pedersen, Crowe, and First American, and defendants' objections to those requests.

## A.

CFI requests a total of $29,960.00 in fees for itself (74.90 hours at a rate of $400.00 per hour) plus $40.84 in costs, for a total of $30,000.84 (CFI's Pet. at 4). The rate of $400.00 per hour is an increase of $50.00 per hour from the rates CFI requested, and this Court approved, in its opinion of August 27, 2007. *See Chao*, 2007 WL 2484338, at \*4.

Defendants argue, at the threshold, that under the "law of the case" doctrine, CFI may not increase its rates from the Court's previously approved rate of $350.00 per hour (Def.'s Objections to CFI's Pet. at 10-11). This argument misconstrues both the law of the case doctrine and the Court's earlier ruling awarding CFI fees based on a $350.00 hour rate.

The law of the case doctrine creates a presumption against a court's reexamining its own rulings in the course of a litigation. *See Marseilles Hydro Power LLC v. Marseilles Land & Water Co.*, 481 F.3d 1002, 1004 (7th Cir. 2007). Here, we are not reexamining the correctness of earlier rulings on appropriate billing rates, but instead we are considering whether the passage of time and intervening events warrant a change in those rates. To be sure, this Court's earlier ruling did not

9

hold that CFI may never receive more than $350.00 per hour for its services. The Court awarded fees at that hourly rate because CFI requested $350.00 per hour for its services, and the information supplied by CFI *at that time* showed this to be the reasonable rate *at that time*. *See Chao*, 2006 WL 3422195, at *2; *Chao*, 2007 WL 2484338, at *4.

In the current petition, CFI asks this Court to approve a higher rate, to reflect the fact that two years ago, on January 1, 2007, CFI increased the rates it charges to its clients. CFI points out that it did not ask for a rate increase for services during the period covered by the last interim fee period, which ended on May 30, 2007 (CFI's Pet. at 4). CFI argues that we should approve an increased rate to reflect the passage of time since it was named independent fiduciary, and the increase in the rates CFI charges for other matters (*id.* at 4; doc. # 273: CFI's Reply in Supp. of Pet. at 6, 12). We agree. When we appointed CFI in January 2006, we did not anticipate that its work would span a period of more than three years. The length of time that it took to make the distribution to former participants that began in January 2009 was not the result of any improper delay by CFI. Rather, the longer-than-expected time line for this case has largely been the result of the complexity of the accounting work needed to determine the extent of improper withdrawals from the plans by Mr. Klein; the length of time it took to sell the Property (for an amount, we might add, more than $900,000.00 in excess of the $1.7 million number Mr. Klein gave to former participants); and the efforts by defendants to contest virtually every measure that CFI proposed to take. In these circumstances, we find that it would be unfair to tie CFI to a $350.00 hourly rate for its work in perpetuity.

CFI has submitted evidence that the rate it seeks is the same that CFI has typically charged and received for its services since January 2007 (CFI's Reply in Supp. of Pet., Ex. B). We are

10

satisfied that $400.00 is a reasonable hourly rate at which to reimburse CFI for its work since May 2007, and so that is the hourly rate we use here.

Defendants do not challenge the small amount of costs ($40.84) that CFI seeks, but they do challenge the amount of time for which CFI seeks compensation (Def.'s Objections to CFI's Pet., Ex. J). In so doing, defendants challenge the amount of time that CFI recorded in 138 out of 151 time entries as "unreasonable," and propose to reduce the time substantially. We have reviewed those entries, and we find that defendants' objections largely fall into the category of "minute micro-managing" that is inappropriate. *Vardon Golf Co. V. Karsten Mfg. Corp.*, No. 99 C 2785, 2003 WL 1720066, at *4 (N.D. Ill. Mar. 31, 2003). However, we do find two reductions should be made:

- On 06/28/07 (mistyped as 6/28/08), CFI billed 3.50 hours for attending court. That court date, however, did not involve lengthy proceedings. In this Court's opinion of August 27, 2007, we held that while it is fair for CFI to include travel time, a charge of 3.25 hours for a court date was excessive. *Chao*, 2007 WL 2484338, at *4. For the same reason, we find that 3.50 hours billed for attending court is excessive, and we reduce that amount to 2.50 hours. This 1 hour reduction, based on the applicable $400.00 per hour rate, results in a reduction of $400.00.

- On 06/29/07, Mr. Holtzman charged 1.25 hours for a conference call for which Mr. Reynolds and Mr. Altman only charged 1.00 hour. The Court will decrease this charge by .25 hours, resulting in a reduction of $100.00.

These reductions result in a reduction in fees of $500.00 (1.25 hours x 4.0 hours) from the $29,960.00 in fees that CFI sought. Thus, we award CFI $29,460.00 in fees ($29,960.00-$500.00) and $40.84 in costs, for a total award of $29,500.84.

## B.

Next, CFI seeks payment of $33,555.50 in fees to Crowe (CFI's Pet. at 5). In its November 22, 2006 opinion, this Court approved a rate of $350.00 per hour for work performed by Mr. Reynolds, reduced from his billing rate of $390.00 per hour, because we determined that the

11

$390.00 rate was too high in comparison to the $317.00 hourly rate that Mr. Reynolds charged clients two years prior. *Chao*, 2006 WL 3422195, at *3. The Court approved the same rate of $350.00 per hour for Mr. Reynolds's services in its August 27, 2007 opinion, which was the rate CFI requested for Crowe at that time (doc. # 103: CFI's Second Pet. for Fees at 2). *See Chao*, 2007 WL 2484338, at *3.

On October 1, 2007, Crowe raised Mr. Reynolds's rate to $425.00 per hour, and then on April 1, 2008, raised his rate to $435.00 per hour (CFI's Pet. at 5). CFI has demonstrated that Mr. Reynolds has regularly charged Crowe's other clients those increased rates, and that Crowe has regularly received payment for Mr. Reynolds's services at those rates (CFI's Reply, Ex. C, ¶ 3). CFI also has established that those rates are customary for services rendered by someone of Mr. Reynolds's experience (*Id.* at ¶ 4). Moreover, CFI does not seek reimbursement at those increased rates. Instead, CFI asks that the Court approve a proportional increase in Mr. Reynolds's fees based on the $350.00 hourly rate which this Court previously approved. Accordingly, CFI proposes a rate of $385.00 per hour for the period from October 1, 2007, through April 1, 2008, and a rate of $395.00 per hour thereafter (CFI's Pet. at 5 ).

Defendants once again argue that under the law of the case doctrine, Crowe may not increase its rates from the Court's previously approved rate of $350.00 per hour in its August 27, 2007 opinion (Def.'s Objections to CFI's Pet. at 11). We again reject that argument. As we have explained above, the Court's determination that in November 2006 and August 2007, $350.00 per hour was the appropriate rate did not constitute a ruling that Crowe may never receive more than $350.00 per hour for its services. Rather, the Court determined that was the appropriate rate based on the information supplied by CFI *at that time*.

12

We do note that CFI previously represented that Mr. Reynolds "has reduced his hourly rate to $350.00 per hour for the remainder of this project" (doc. # 103: CFI's Second Pet. for Fees at 2). However, we decline to penalize Crowe for failing to anticipate with complete accuracy the duration of this engagement, and the full amount of work that would be required, by holding Crowe to the $350.00 rate that is substantially below Mr. Reynolds's regular rate. *See Chao*, 2008 WL 4899431, at *6 (holding that fees and costs had substantially increased as a result of proceedings on appeal, as well as proceedings in this Court).

Given the passage of more than two years since the Court's November 2006 opinion approving Mr. Reynolds's rate at $350.00 per hour, we will approve an increase in Crowe's rate – but not the full increase sought. In November 2006, comparing Mr. Reynolds's billing rate in 2004 to the rate he sought in 2006, the Court found that an approximately 10 percent increase in fees was appropriate over the two-year period. Applying that same rationale now, we will increase Mr. Reynolds's rate to $385.00 per hour for the period from October 1, 2007 through September 2008. We will not increase the rate by another $10.00 per hour, to an hourly rate of $395.00, for the period beginning with April 1, 2008, a decision which we conclude fairly balances the unforeseen passage of time and the representation that Crowe would not seek an increase in the $350.00 hourly rate.

Defendants have also filed line-by-line objections to Crowe's fee request, challenging virtually every entry (Def.'s Objections to CFI's Pet., Ex. K) (challenging 92 out of 94 time entries). We have reviewed defendants' challenges to Crowe's entries, and we agree that the following reductions should be made:

- The 10/12/07 entry of 7.50 hours for analysis to restore improperly paid expenses to the trust should be reduced in light of the 25.50 hours already spent on this same issue between

13

10/09/07 and 10/11/07. The 10/12/07 entry should be reduced by 6.00 hours to 1.50 hours, which, at the billing rate of $90.00 per hour, results in a reduction of $540.00.

- The 10/19/07 entry by Mr. Reynolds for 4.75 hours spent reviewing profit sharing allocations and communicating changes should be reduced by 2.75 hours, to 2.00 hours, which, at the billing rate of $385.00 per hour, results in a reduction of $1,058.75.

- The entries on 10/22/07 and 10/25/07 for preparing a letter to CFI recorded 7.75 hours of time. We have previously found 8.00 hours to be excessive for preparing such a letter. *See Chao*, 2007 WL 2484338. We likewise find that 7.75 is too much time to spend for preparing and revising a letter, and should be reduced by 3.75 hours, to 4.00 hours. At the applicable billing rate of $385.00 an hour, this results in a reduction $1,443.75.

- The 10/26/07 entry of 6.00 hours for verifying opening and ending balances should be reduced by one-half, to 3.00 hours, which, at the billing rate of $110.00 per hour, results in a reduction of $330.00.

- The 12/12/07 entry of 6.50 hours by Mr. Reynolds for updating worksheets pursuant to court order should be reduced by 3.50 hours, to 3.00 hours, which, at the billing rate of $385.00 per hour, results in a reduction of $1,155.00.

We have considered, but reject, defendants' other challenges to CFI's request for compensation for Crowe.[2] The reductions we have described above total 18.5 hours, resulting in a reduction in fees of $4,527.50. Thus, we award Crowe a total of $29,841.00 in fees ($34,368.00 - $4,527.50).[3]

---

[2]In particular, we note that defendants' argument that Crowe's fee should be reduced because we did not fully accept its initial distribution calculation (Defs.' Objections to CFI Pet. at 11-12) misreads the basis for requiring defendants to pay fees. The fee shifting here is not based on a statute that requires CFI (or its retained professionals) to "prevail" on any particular work for which compensation is sought. As we explained above, the basis of fee shifting here is to ensure that defendants (and not others) bear the costs incurred by reason of Mr. Klein's breach of fiduciary duty. Moreover, even in a fee shifting statute, a prevailing party may be compensated for work on discrete issues on which it did not prevail, so long as the work on those issues was intertwined with the work on issues on which the party prevailed. *See, e.g., Hensley v. Eckerhart*, 461 U.S. 424, 436 (1983) (in determining amount of the fee shifting under Civil Rights Attorney's Fees Awards Act, the court must consider the relationship between the claims on which the plaintiff succeeded or failed). Here, the work that Crowe did in determining the pool from which distributions should be made and the amount that each former participant would receive was valuable and related to the overall result, even if the Court required some revisions to those calculations.

[3]The total fees billed, based on our review of Crowe's records with the adjustment of Mr. Reynolds's hourly rate to $385.00 as discussed above, comes to $34,368.00. We thus take from that figure the $4,527.50 in reductions.

**C.**

Next, we turn to CFI's request to pay Pedersen $183,309.62 in attorneys' fees and $11,007.96 in costs (CFI's Pet. at 7-8). Defendants raise a number of objections both to the hourly rates for which compensation is sought, and to specific time entries for which Pedersen seeks compensation.

We begin with the rates for Pedersen's work. Although Pedersen raised its customary rates at the beginning of 2007, because CFI hired Pedersen at the end of 2006 at its 2006 rates, in its September 12, 2007 order, the Court approved compensation to Pedersen for work through May 2007 at its 2006 billing rates of: $385.00 per hour for Mr. Holtzman; $365.00 per hour for Mr. Altman; $305.00 per hour for Mr. Solomon; and $170.00 per hour for Ms. Farrington (doc. # 128: 09/12/07 Order). The only exception was that we awarded fees for Mr. Bernstein, who joined the firm in 2007, at his 2007 rate of $250.00 per hour (*id.*). On October 1, 2007, Pedersen increased its rates to $415.00 per hour for Mr. Holtzman, $395.00 per hour for Mr. Altman, and $325.00 per hour for Mr. Solomon; on April 1, 2008, the rates were further increased to $425.00 per hour for Mr. Holtzman, $405.00 per hour for Mr. Altman, and $185.00 per hour for Ms. Farrington (CFI's Pet. at 6, Ex. D, Holtzman Aff.). CFI has offered evidence that these increased rates are the ones that these attorneys and paralegals regularly charge and that Pedersen regularly receives for their services (*id.*, Ex. D, Holtzman Aff.).

CFI now asks the Court to approve rates that reflect some, but not all, of those increases. For the period from October 1, 2007, through March 31, 2008, CFI asks that Pedersen be compensated at the following rates: $395.00 per hour for Mr. Holtzman; $375.00 per hour for Mr. Altman; and $310.00 per hour for Mr. Solomon (CFI's Pet. at 6). For work performed between April 1, 2008, and September 30, 2008, CFI seeks the following increased rates for attorneys who had worked on

15

this matter at the time of the interim fee petition that led to the Court's September 2007 award: $400.00 per hour for Mr. Holtzman; $380.00 per hour for Mr. Altman; and $172.50 for Ms. Farrington (*id.*). Since the last interim fee petition, three additional Pedersen personnel have worked on the case: Stanley Sneeringer, Elizabeth Peterson, and Lauren Waidzunas. CFI has provided the Court with their work and educational backgrounds, and seeks approval from this Court for the rates of: $270.00 per hour for Mr. Sneeringer prior to April 1, 2008, and $280.00 per hour after April 1, 2008; $120.00 per hour for Ms. Peterson prior to April 1, 2008, and $145.00 per hour after April 1, 2008; and $110.00 per hour for Ms. Waidzunas (*id.* at 7-8). These rates are discounted $10.00 per hour from Pedersen's normal billing rates (*id.*).

Defendants again argue that the law of the case doctrine bars this Court from approving an increased hourly rate (Def.'s Objections to CFI's Pet. at 7). We again reject that argument. The Court's approval of hourly rates for Pedersen one and a half years ago did not cap forever the rates at which Pedersen's work may be compensated in this case. Moreover, CFI has supplied an affidavit confirming that the increased rates Pedersen's attorneys and paralegals charged are the rates they normally charge other clients, and that Pedersen regularly has received payment for their work at those rates (CFI's Pet., Ex. D., Holtzman Aff.). Thus, we find that CFI has adequately shown that the increased rates Pedersen charges are its ordinary rates, and are reasonable.[4] We further point out that the hourly rates for Pedersen's work that CFI asks us to approve are discounted from those ordinary rates.

_____

[4]Defense counsel notes that he bills his time at a lower hourly rate than do Pedersen's attorneys (*see* Defs.' Objections to CFI's Pet. at 10 and Ex. H). The difference in rates may be attributable to a number of factors, such as firm size and overhead; the experience of various attorneys; and the client bases that they typically service. Defendants have not explained why we should find that the rate differential means that Pedersen's hourly rates are not reasonable, and in the face of the evidence submitted by CFI to the contrary, we decline to make such a finding.

That said, in a fee-shifting context, we do not consider it appropriate to approve two rate increases for a 16-month period. Thus, we approve the following rates for the entire period from May 2007 through September 2008: $395.00 for Mr. Holtzman; $375.00 for Mr. Altman: $310.00 for Mr. Solomon; $172.50 for Ms. Farrington; $270.00 for Mr. Sneeringer; $120.00 for Ms. Peterson; and $110.00 for Ms. Waidzunas (CFI's Pet. at 6-8). We decline to approve the portions of the April 1, 2008, hourly rate increases that CFI seeks for Mr. Holtzman ($5.00), Mr. Altman ($5.00), Ms. Sneeringer ($10.00) and Ms. Peterson ($20.00). This decision reduces the fee request by Pedersen from $183,309.62 to $180,578.37.

Defendants also object that the number of hours billed by Pedersen is unreasonable. Apart from the objection to block billing, which we already have rejected, defendants make three general arguments which we address – and reject – below.

*First,* defendants complain that Pedersen billed for the time its attorneys spent on conversations between themselves, and between Pedersen attorneys and Mr. Zilberstein of CFI (Def.'s Objections to CFI's Pet. at 8-9). However, no case law suggests that there is anything inherently objectionable about allowing each participant to bill for his or her participation in an intra-office conference. To the contrary, those types of conferences can promote efficiency and avoid duplicative and unnecessary activity, especially where, as here, many of the conversations occurred between partners and associates. Those kinds of conferences can help reduce the occasions in which younger attorneys pursue avenues of research that more experienced, senior attorneys may deem unwarranted.

Likewise, conversations between Pedersen attorneys and its client, CFI, are plainly appropriate. CFI has an interest in being kept in the loop by its retained attorneys, in being consulted

17

about strategies to follow, and in being able to direct its attorneys' activities. To the extent that defendants' true objection is that Pedersen was unnecessary altogether, since "[t]here is no need for an attorney (Zilberstein) to have to hire an attorney" (Defs.' Objections to CFI's Pet. at 8), we already rejected that proposition when we authorized CFI to hire counsel to represent it in the many legal matters raised in this case.

*Second*, defendants argue that the legal research conducted by Mr. Holtzman should have been done by less experienced and cheaper-billing attorneys. We agree with the general proposition that it often is less expensive for younger attorneys who work at lower hourly billing rates to perform research or other basic tasks than it is for higher-priced, more senior attorneys to do so. But, "often" does not mean "always." Sometimes, the decreased time it may take an experienced attorney to research an issue may result in less total cost to the client. That is generally a matter for the judgment of the attorneys directing and performing the work. Our review of the time records shows that Pedersen in fact exercised judgment in this regard. In some instances, Mr. Holtzman performed research; in other instances, younger attorneys did the research; and in yet other instances, Mr. Holtzman and younger attorneys conducted research collaboratively. Many of the legal research issues in this case involved matters of importance and/or complexity, such as participant shares in the plans, prejudgment interest, and stays of participant distributions. Thus, while we have found some duplication of time that leads us to reduce the compensation for Pedersen's services (which we discuss below), we find no endemic misallocation of research tasks.

*Third*, defendants suggest that Pedersen's fees are excessive because Pedersen's attorneys spent far more time on the matter than did defense counsel, and thus should be subjected to a large percentage reduction (*see* Def.'s Objections to CFI's Pet. at 9-10 and Ex. H and Am. Ex. I).

18

Defendants rely on *Harper v. City of Chicago Heights*, 223 F.3d 593, 604 (7th Cir. 2000), which held that if a fee petition is vague or inadequately documented on the reasonableness of hours expended, the court may reduce the proposed fees by a reasonable percentage. *Id.* at 605. That is not the case here: we do not find Pedersen's time records to be vague or inadequately documented.

That leads us to defendants' line-by-line objections to Pedersen's time entries (Def.'s Am. Ex. I). As with CFI's and Crowe's fee statements, defendants challenge almost every entry on one ground or another. We have reviewed defendants' challenges to Pedersen's entries, and we agree that the following reductions should be made:

- On 06/15/07, Mr. Holtzman billed .50 hours for phone calls to Mr. Zilberstein and Mr. Reynolds, but they did not bill for this time. We find defendants' criticism here valid, and thus eliminate the .50 hours Pedersen billed for this time. *See Chao*, 2007 WL 2484338, at *6 (reducing time for which Pedersen was compensated where other participants in conferences billed less for same conferences). At Mr. Holtzman's discounted rate of $395.00 per hour, this results in a decrease of $197.50.

- On 07/03/07, Mr. Holtzman billed .50 hours for phone calls to Mr. Zilberstein and Mr. Reynolds, but Mr. Reynolds did not bill for this call, and Mr. Zilberstein only billed .10 hours for the call. We find defendants' criticism here valid, in part, and eliminate .25 hours that Pedersen billed. Pedersen bills in quarter-hour segments. At Mr. Holtzman's discounted rate of $395.00 per hour, this results in a decrease of $98.75.

- On 07/30/07, Mr. Holtzman billed .50 hours for separate telephone calls with Mr. Broitman and Mr. Reynolds. As Mr. Reynolds did not charge for this call, we eliminate .25 hours Pedersen billed here. At Mr. Holtzman's discounted rate or $345.00, this results in a decrease of $98.75.

- Mr. Holtzman billed 14.75 hours for legal research, document review, and follow-up on allocation of cost issues pursuant to the Court's September 14, 2007 Memorandum Opinion and Order. That research resulted in a five-page brief on the question of what payments should be borne by plan participants or by defendants. Given Mr. Holtzman's experience, we conclude 10 hours is sufficient. We therefore reduce this segment of time by 4.75 hours, which, at Mr. Holtzman's hourly rate of $395.00, results in a reduction of $1,876.25.

- Mr. Holtzman billed 27.25 hours for research and follow-up on issues related to prejudgment interest and participant shares pursuant to the Court's October 2, 2007 order. We do not fault

Mr. Holtzman for doing this research, and we accept that certain additional time and effort was necessary due to defendants' failure to maintain necessary records. That said, given Mr. Holtzman's experience, we conclude that the 27.25 hours spent on these issues should be reduced by 12.25 hours, to 15.00 hours. At Mr. Holtzman's hourly billing rate of $395.00, this results in a reduction of $4,838.75.

- On 02/11/08 and 02/13/08, Ms. Peterson billed 13.00 hours for researching the appealability issue. Inasmuch as Mr. Holtzman also performed research on this issue, we reduce Ms. Peterson's time by 6.00 hours, to a total of 7.00 hours. At Ms. Peterson's hourly billing rate of $120.00, this results in a reduction of $720.00.

- On 03/13/08, 03/14/08, and 03/19/08, Mr. Sneeringer billed 8.25 hours for legal research regarding a stay of distribution to beneficiaries pending appeal. Inasmuch as Mr. Holtzman also performed research on this issue, we reduce Mr. Sneeringer's time by 2.25 hours, to 6.00 hours. At his hourly billing rate of $270.00, that results in a reduction of $607.50.

- On 04/08/08 and 04/10/08, Mr. Sneeringer billed 7.75 hours for legal research on the motion to reconsider stay pending appeal. Inasmuch as Mr. Holtzman also performed research on this issue, we reduce Mr. Sneeringer's time for this research by 2.75 hours, to 5.00 hours. At his hourly billing rate of $270.00, that results in a reduction of $742.50.

- On 04/11/08 and 04/14/08, Mr. Sneeringer billed 4.75 hours for drafting the reply to a motion to reconsider, despite Mr. Holtzman's 2.5 hours spent drafting the same document. We reduce Mr. Sneeringer's time for this work by 1.75 hours, to 3.00 hours. At his hourly billing rate of $270.00 that results in a reduction of $472.50.

- On 05/22/08, 05/23/08, and 05/27/08, Ms. Farrington billed 9.00 hours for "review of docket" to determine what matters Pedersen had worked on since June 2007 (the period since the last interim fee award). Pedersen may charge for assembling records to show work performed, in anticipation of a fee petition or to advise the Court on how much money should remain in the constructive trust to cover fees and costs. But 9.00 hours strikes us as excessive for that task, and should be reduced by 7.00 hours, to a total of 2.00 hours. At Ms. Farrington's hourly billing rate of $172.50, that results in a reduction of $1,207.50.

- From 07/10/08 through 07/14/08, Ms. Peterson billed over 15.50 hours for reviewing cases cited in defendants' motion for stay of execution of judgment pending appeal. We reduce that amount by 5.50 hours, to a total of 10.00 hours. At Ms. Peterson's hourly billing rate of $120.00, that results in a reduction of $660.00.

- Between 07/10/08 and 07/30/08, Mr. Sneeringer billed approximately 64.25 hours for researching, revising, and drafting the response to the motion to stay, on top of the roughly 9.00 hours billed by Mr. Holtzman for the same work. In light of Mr. Holtzman's time on

the work, we reduce Mr. Sneeringer's time by 34.25 hours, to a total of 30.00 hours. At Mr. Sneeringer's hourly billing rate of $270.00, that results in a reduction of $9,247.50.

- Between 08/12/08 and 08/31/08, Mr. Sneeringer billed approximately 55.75 hours for researching, drafting, and editing appellee's Seventh Circuit brief. In light of the work done on this matter by others at Pedersen, we reduce this amount by 25.00 hours, to a total of 30.75 hours. At his hourly billing rate of $270.00, that results in a reduction of $6,750.00.

We have considered, but reject, defendants' other challenges to CFI's request for attorneys' fees for Pedersen. The reductions we have described above total 102.50 hours, resulting in a reduction in fees of $27, 517.50. Thus, we award Pedersen $153,060.87 in fees ($180,578.37 - $27,517.50).

CFI also seeks payment for Pedersen's costs in the amount of $11,880.54 (CFI's Pet. at 8). Defendants have not challenged any of the costs incurred by Pedersen.

We note that the vast majority of the costs that Pedersen incurred – $11,007.96 – are Lexis/Nexis research charges. Pedersen typically charges for Lexis/Nexis research separately from its billable hours, and charges its clients at the same rate that Lexis/Nexis charges Pedersen (CFI Pet. at 8). CFI provides details as to the amount and type of research performed (*id.* at 8-9). This Court previously declined to award Pedersen $3,643.84 in Lexis/Nexis costs – incurred between October 2006 and May 2007 – because although CFI's supplemental submission established that Pedersen typically charges its clients separately for Lexis/Nexis time, CFI did not provide us with "the amount of computer time spent that generated this cost, or how Pedersen calculated this costs," information necessary to determine whether the amount sought is reasonable (doc. # 128: 09/12/07 Min. Order at 2). However, the Court gave Pedersen the opportunity to seek compensation for the Lexis/Nexis charges when it makes its final request for compensation. As CFI has submitted Pedersen's request for these costs, the Court presumes that this will be Pedersen's final request for Lexis/Nexis fees in

21

this case. The evidence CFI has submitted now allows us to conclude that the Lexis/Nexis costs, as well as the other costs incurred by Pedersen, are reasonable and we therefore will award them in full.

## D.

Finally, CFI requests this Court authorize it to pay $6,500.00 to First American for its preparation of notices to former plan participants regarding distribution amounts and options (doc. # 254: CFI's Supplement to Pet. at 1). First American mailed the notices on November 28, 2008, and continues to provide ongoing services to CFI by processing payments or IRA roll-overs for former plan participants (*id.* at 1-2). The request for payment to First American includes $1,000.00 for Administrative/Custodial Services and $5,500 for Participant Distribution Processing (44 participants at a rate of $125 per participant) (*id.*, Ex. A). CFI represents that the $6,500.00 constitutes First American's full and final fee for services in this matter, including any further dealings with former plan participants concerning the handling of the amounts to which they are due.

Defendants raise only one objection to this request for payment to First American. They argue that First American improperly sent out 44 distribution packages, even though there are at most 39 participants entitled to distributions, and on December 17, 2008, First American estimated that there would be only 30 to 35 participants (doc. # 268: Def.'s Opp'n to CFI's Supplement at 1; *id.*, Ex. B). As CFI explains, while there are only 39 participants, there are 44 accounts: Elaine Klein has two accounts, and Mr. Klein has five. As a result, First American sent separate election packages for each account (CFI's Reply in Supp. of Pet. at 12-13). We do not quarrel with that decision, and we therefore authorize CFI to make payment to First American of $6,500.00.

The final issue we address is who shall pay for the awards of fees. In its order of January 5, 2006, this Court stated that: "Other than transactional fees that would have been incurred by the plans even if defendant Klein had not been removed as trustee, all of Consulting Fiduciaries, Inc.'s fees and expenses shall be paid by defendant Klein" (doc. # 36). By the time of issuance of our fourth opinion in this case, on November 30, 2007, we determined that "any final payments to CFI, Crowe Chizek and Pedersen & Houpt will have been caused by the need to replace Mr. Klein as trustee," and thus any future payments to them would be chargeable to Mr. Klein. *Chao*, 2007 WL 4300481, at *3. Indeed, defendants do not dispute that the fees and expenses CFI seeks were occasioned by the Court's removal of Mr. Klein as trustee. Therefore, the Court finds that the fees and costs awarded in this opinion should be paid from the $334,533.80 in Mr. Klein's GP Klein (Rollover-Formerly Directed) account, which we previously ordered withheld from the ongoing distribution to ensure the availability of funds sufficient to satisfy any further fees and costs that Mr. Klein would be required to pay. *Chao*, 2008 WL 4899431, at *6-7.

## CONCLUSION

For the foregoing reasons, the Court grants CFI's interim petition for payment of fees and costs (doc. # 244) and its supplement to that petition (doc. # 254), but in the reduced amount of $229,970.25, which consists of the following: (1) $29,500.84 in fees and costs to CFI; (2) $29,028.00 in fees to Crowe; (3) $164,941.41 in fees and costs to Pedersen; and (4) $6,500.00 in fees

and costs to First American Bank. CFI is authorized to make those payments from the funds in the constructive trust that are allocated to the GP Klein (Rollover-Formerly Directed) account.

ENTER:

SIDNEY I. SCHENKIER
United States Magistrate Judge

Dated: February 13, 2009